**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DELAWARE RIVERKEEPER NETWORK,  *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> FEDERAL ENERGY REGULATORY COMMISSION, *et al.*, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> )   Civil Action No. 1:16-cv-00416-TSC |

**UNOPPOSED MOTION OF PENNEAST PIPELINE COMPANY, LLC**
**TO INTERVENE AS DEFENDANT**
**AND TO DEFER FILING AN ANSWER-IN-INTERVENTION**

PennEast Pipeline Company, LLC ("PennEast") respectfully moves this Court for leave to intervene as a Defendant in this matter pursuant to Fed. R. Civ. P. 24(a)(2), or, in the alternative, Fed. R. Civ. P. 24(b)(1)(B).  With this motion, PennEast submits the attached memorandum in support and proposed order, as well as a proposed motion to dismiss, memorandum in support, and proposed order.

In addition, and consistent with Fed. R. Civ. P. 24(c), PennEast seeks leave to defer filing an answer in intervention until such time as the Federal Defendants[1] are required to answer, or such other time established by subsequent order of this Court.

Pursuant to Local Rule 7(m), counsel for PennEast has conferred with counsel for Plaintiffs and for the Federal Defendants.  Plaintiffs do not oppose the relief sought.  The Federal

---

[1] "Federal Defendants" refers to the Federal Energy Regulatory Commission along with Norman C. Bay, Tony Clark, Colette Honorable, and Cheryl A. LaFleur, all in their official capacities as Commissioners of the Federal Energy Regulatory Commission.

Defendants take no position at this time on PennEast's Motion to Intervene, and consent to the request to defer filing an answer in intervention.

Dated: May 10, 2016                              Respectfully submitted,

                                                 */s/ Michael B. Wigmore*
                                                 Michael B. Wigmore (D.C. Bar No. 436114)
                                                 Jeremy C. Marwell (D.C. Bar No. 1000299)
                                                 VINSON & ELKINS LLP
                                                 2200 Pennsylvania Avenue, NW
                                                 Suite 500 West
                                                 Washington, DC 20037
                                                 Phone: 202.639.6778
                                                 Email: mwigmore@velaw.com

                                                 *Attorneys for PennEast Pipeline Company, LLC*

*Of Counsel:*

Frank H. Markle                          James D. Seegers
PENNEAST PIPELINE COMPANY, LLC           Sabina Dugal Walia
460 North Gulph Road                     VINSON & ELKINS LLP
King of Prussia, PA 19406                1001 Fannin St.
Phone: 610.768.3625                      Suite 2500
Email: marklef@ugicorp.com               Houston, TX 77002
                                         Phone: 713.758.2939
                                         Email: jseegers@velaw.com

## CERTIFICATE OF SERVICE

I, Jeremy C. Marwell, hereby certify that a copy of the foregoing document, filed through the CM/ECF system, will be sent electronically to the registered participants as identified on the Notice of Electric Filing (NEF) and paper copies shall be served by first class mail postage prepaid on all counsel who are not served through the C/M ECF system on May 10, 2016.

/s/ Jeremy C. Marwell
Jeremy C. Marwell

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

DELAWARE RIVERKEEPER      )
NETWORK,  *et al.*,           )
                                 )
     Plaintiffs,          )
                                 )
            v.                )     Civil Action No. 1:16-cv-00416-TSC
                                 )
FEDERAL ENERGY REGULATORY   )
COMMISSION, *et al.*,        )
                                 )
     Defendants.        )
_____)

**MEMORANDUM IN SUPPORT OF PENNEAST PIPELINE COMPANY, LLC'S
UNOPPOSED MOTION TO INTERVENE AS DEFENDANT
AND TO DEFER FILING AN ANSWER-IN-INTERVENTION**

      PennEast Pipeline Company, LLC ("PennEast") seeks to intervene as a defendant in this case, which Plaintiffs Delaware Riverkeeper Network and Maya van Rossum (collectively, "DRN") filed against the Federal Energy Regulatory Commission ("Commission") and its Commissioners (collectively, "Federal Defendants").  Plaintiffs seek, among other things:  (1) a "declar[ation] that the procedure utilized by the Commission to issue a Certificate of Convenience and Necessity for . . . PennEast['s] Pipeline Project . . . deprives Plaintiffs and its members their aesthetic, recreational, liberty, and/or property interests without Due Process," Compl. [Dkt. No. 1] at 60; (2) a declaration that the right of eminent domain that Congress conferred on Certificate holders, and the Natural Gas Act's preemptive effect on state and local laws, are facially unconstitutional, *id.* at 59; and (3) in connection with this declaration, an "immediate injunction," *id.* ¶ 282.  Because this relief would directly and adversely affect PennEast's economic, operational, and business interests, PennEast readily satisfies the standards for as-of-right and permissive intervention.

1

In connection with its motion for leave to intervene, PennEast also seeks leave to defer filing an answer-in-intervention until such time as Federal Defendants are required to answer the Complaint, or such other time as is set by order of this Court.

PennEast is authorized to represent the following:  Plaintiffs do not oppose the relief sought in this motion.  Federal Defendants take no position at this time on PennEast's motion to intervene, and consent to PennEast's request for leave to file an answer at such time as the Federal Defendants are required to do so.

## BACKGROUND

Plaintiffs seek a declaration that the Commission's "review and approval process," as "specifically" applied to the pending application for the PennEast Pipeline Project ("PennEast Project" or "Project"), is affected by structural and actual bias "which violates the Due Process rights of [DRN] . . . and its members."  Compl. ¶ 1.  In their own words, "Plaintiffs come to this Court seeking declaratory and injunctive relief to stop an unconstitutionally biased proceeding [involving PennEast]," whose harm (in Plaintiffs' view) "can be prevented only by an immediate injunction."  *Id.* ¶¶ 18, 282.

The PennEast Project is a critical new greenfield pipeline infrastructure project designed and proposed to be developed by PennEast to satisfy the growing demand for natural gas transportation capacity by local distribution companies, electric generators, and end-users in the capacity-constrained region of eastern and southeastern Pennsylvania, New Jersey, New York, and surrounding states, as well as producers in close proximity to these markets.  *See* Affidavit of Peter G. Terranova (attached hereto as "Exhibit A") ¶¶ 9-10, 12.  The Project will bring lower-cost natural gas from multiple upstream supply sources located at various receipt point interconnections in the eastern Marcellus Shale region, to natural gas consumers in the

surrounding states.  PennEast developed the Project in response to increasing market demand in New Jersey, Pennsylvania, and New York, including interest from shippers who require transportation capacity to accommodate increased demand for, and receipts of, natural gas into the region.  *Id*. ¶ 12.  An additional supply of natural gas will benefit the region's consumers, utilities, and electric generators by increasing competition among suppliers and pipeline transportation providers.  *Id*. ¶ 13.  When completed, the Project—which will provide up to 1,107,000 Dth/d of new firm natural gas transportation capacity to the market on a year-round basis—will consist of approximately 118 miles of 36-diameter mainline transmission pipeline, stretching from Luzerne County, Pennsylvania to Mercer County, New Jersey.  *Id*. ¶¶ 9, 11.

Following its public announcement of the Project, PennEast held an Open Season in August 2014, resulting in the execution of long-term, binding precedent agreements with 12 shippers for approximately 90 percent of the Project's firm transportation capacity.  *See* Terranova Aff. ¶ 14.  Subsequently, to facilitate the Project and to identify and address environmental and landowner concerns early in the Project's certification process, PennEast participated in the Commission's National Environmental Policy Act ("NEPA") pre-filing review process.  Beginning in October 2014, PennEast participated in more than 200 meetings with public officials and non-governmental organizations, held four formal open house meetings with Commission Staff in attendance to provide stakeholders with updated information regarding the route and Project planning, hosted 15 informational sessions for affected landowners, and participated in five Commission Staff-hosted, public scoping meetings to garner input from the public and interested parties on the Project.  *Id*. ¶ 7.  PennEast also responded to numerous comments filed by interested stakeholders during the NEPA pre-filing review process.  This iterative and interactive process among PennEast, the Commission Staff, and Project

3

stakeholders resulted in the evaluation of over 100 route alternatives and above-ground facilities site locations, a reduction of the Project's anticipated environmental impacts, and improvements in the Project's proposed mitigation measures. *Id.* ¶¶ 7-8.

On September 24, 2015 PennEast filed with the Commission an application for a Certificate of Public Convenience and Necessity ("Certificate") and related authorizations, as required by Section 7(c) of the Natural Gas Act ("NGA"), 15 U.S.C. § 717f(c), and Parts 157 and 284 of the Commission's regulations, 18 C.F.R. Parts 157 and 284.[1]  Terranova Aff. ¶ 5; *see* 15 U.S.C. § 717f(c) ("No natural-gas company" shall "undertake the construction or extension of any facilities" for the "transportation or sale of natural gas" "unless there is in force . . . a certificate of public convenience and necessity issued by the Commission authorizing such acts or operations.").  In its Certificate application, PennEast asked the Commission to issue an order granting all authorizations and waivers requested by PennEast by August 1, 2016.   The Commission subsequently issued a notice setting a deadline for comments of October 29, 2015.[2] Various agencies, companies, organizations, and individuals filed interventions and/or comments in the Commission's proceedings, including the Plaintiffs.[3]  PennEast responded to these and other comments in an Answer filed on November 13, 2015.[4]

---

[1] *See PennEast Pipeline Company, LLC*, Docket No. CP15-558-000, "Application of PennEast Pipeline Company, LLC for Certificates of Public Convenience and Necessity and Related Authorizations" (Sept. 24, 2015).

[2] *See PennEast Pipeline Company, LLC*, Docket No. CP15-558-000, "Notice of PennEast Pipeline Company, LLC's 9/24/15 Filing of Application Requesting Authorization to Construct and Operate a New Natural Gas Pipeline System Etc." (Oct. 8, 2015).

[3] *See PennEast Pipeline Company, LLC*, Docket No. CP15-558-000, "Delaware Riverkeeper Network Motion to Intervene" (Sept. 28, 2015); *PennEast Pipeline Company, LLC*, Docket No. CP15-558-000, "Maya van Rossum Motion to Intervene" (Sept. 28, 2015); *PennEast Pipeline Company, LLC*, Docket No. CP15-558-000, "Comment of Delaware Riverkeeper Network" (Oct. 30, 2015).

[4] *See PennEast Pipeline Company, LLC*, Docket No. CP15-558-000, "Motion for Leave to Answer and Answer of PennEast Pipeline Company, LLC" (Nov. 13, 2015).

Under the Natural Gas Act, a party aggrieved by an order of the Commission may obtain judicial review of an order granting a Certificate only by first seeking rehearing before the Commission, and thereafter filing a petition for review in the appropriate U.S. Court of Appeals. *See* 15 U.S.C. § 717r(b).  Although the Commission has not yet acted on PennEast's original application for a Certificate, Plaintiffs seek in this suit a declaration that the Commission's review and approval process for natural gas pipelines generally—and for "the PennEast Pipeline Project . . . specifically"—suffers from "structural" and "actual" bias, in alleged violation of the Plaintiffs' Due Process rights.  Compl. ¶ 1.  Plaintiffs also seek an "immediate injunction," contending that the alleged violations "will cause irreparable injury unless enjoined." *Id.* ¶ 282. In short, through this suit, Plaintiffs aim to stop the process by which PennEast is currently attempting to obtain a Certificate that, by federal law, is a prerequisite to constructing and eventually operating its proposed natural gas pipeline.

On May 3, 2016, the Commission filed a motion to dismiss the Complaint for lack of jurisdiction and failure to state a claim.  *See* Defs.' Mot. to Dismiss Pltfs.' Compl. for Lack of Subject Matter Jurisdiction and Failure to State a Claim [Dkt. No. 11].  Consistent with Federal Rule of Civil Procedure 12(a)(4), the Commission has not yet answered the Complaint.

## ARGUMENT

## I.   PENNEAST IS ENTITLED TO INTERVENE AS OF RIGHT.

PennEast has a right to intervene because Plaintiffs' suit seeks to enjoin and declare invalid the Commission's review and approval process for natural gas pipelines generally, and "the *PennEast Pipeline Project* . . . specifically." Compl. ¶ 1 (emphasis added).  Federal Rule of Civil Procedure 24(a)(2) provides in relevant part,

> On timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or

5

> impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Under this rule, a party has a right to intervene in an action if: (1) the motion is timely; (2) the application demonstrates a legally protected interest in the action; (3) the action threatens to impair that legally protected interest; and (4) no party to the action will adequately represent the applicant's interests. *Karsner v. Lothian*, 532 F.3d 876, 885 (D.C. Cir. 2008); *see also Forest Cty. Potawatomi Cmty. v. United States*, No. 15-105 (CKK), 2016 WL 1465324, at *3 (D.D.C. Apr. 14, 2016).

In addition, a party seeking to intervene as-of-right must show Article III standing. *See Fund For Animals, Inc. v. Norton*, 322 F.3d 728, 731-32 (D.C. Cir. 2003). "[T]he standing inquiry mirrors the Rule 24 inquiry." *Am. Horse Prot. Ass'n, Inc. v. Veneman*, 200 F.R.D. 153, 157 (D.D.C. 2001). In particular, if an intervenor has standing, that showing "is alone sufficient to establish that [it] has 'an interest relating to the property or transaction which is the subject of the action'" under Rule 24(a)(2). *Fund For Animals*, 322 F.3d at 735; *see also Am. Horse*, 200 F.R.D. at 157 ("[I]t is impossible to conjure a case in which an intervenor would have constitutional standing to intervene but not have a sufficient 'interest in the litigation' to justify intervention under Fed. R. Civ. P. 24(a)(2).").

PennEast easily satisfies the requirements for Article III standing and mandatory intervention under Rule 24(a)(2). PennEast has a legally protected interest that this action threatens to impair. If DRN prevails and obtains the extraordinary relief it seeks, then the Commission would be enjoined from proceeding with the ongoing process concerning PennEast's Certificate of Public Convenience and Necessity which is required for PennEast to construct and operate its proposed pipeline project. Because PennEast's motion is timely, it has

a legally protected interest that may be impaired by this action, and no other party in this litigation can adequately represent PennEast's interests, PennEast has a right to intervene.

**A.     PennEast Has Article III Standing.**

To establish Article III standing, a prospective intervenor must show: (1) injury-in-fact, (2) causation, and (3) redressability.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *see also Am. Horse* 200 F.R.D. at 156 ("[W]hen a party seeks to intervene as a defendant to uphold what the government has done, it would have to establish that it will be injured in fact by the setting aside of the government's action it seeks to defend, that this injury will have been caused by that invalidation, and the injury would be prevented if the government action is upheld.").  As the entity that would be granted the Certificate pursuant to the process Plaintiffs seek to declare unconstitutional and enjoin, PennEast is effectively "an object of the action . . . at issue" and its standing is "self-evident."  *Sierra Club v. EPA*, 292 F.3d 895, 899-900 (D.C. Cir. 2002); *see also Zivotofsky ex rel. Ari Z. v. Sec'y of State*, 444 F.3d 614, 618 (D.C. Cir. 2006) (there is "ordinarily little question" that a party who is "the object of government action (or foregone action)" has standing) (internal alterations omitted).

DRN's proceeding threatens PennEast with "concrete and particular[]" and "actual or imminent" injuries, sufficient for Article III standing.  *Lujan*, 504 U.S. at 560.  Specifically, if DRN were to obtain relief from this Court that even temporarily delayed—never mind indefinitely postponed—the Commission's process for reaching a decision on PennEast's Certificate application, PennEast would suffer a tangible and potentially serious economic impact from the delay and disruption of its proposed construction efforts and eventual operations.

PennEast could also suffer harms related to its contractual commitments to customers (i.e., natural-gas shippers) who have already executed various long-term, binding precedent agreements with PennEast for approximately 90 percent of the Project's firm transportation capacity.  *See* Terranova Aff. ¶¶ 14-16; *see also Humane Soc'y v. Vilsack*, 797 F.3d 4, 9 (D.C. Cir. 2015) (economic injuries are a "classic form of concrete and particularized harm"); *Cal. Forestry Ass'n v. Thomas,* 936 F. Supp. 13, 17 (D.D.C. 1996) ("Plaintiffs' future economic injury satisfies the injury in-fact requirement.").  PennEast's contractual commitments to its Project shippers require PennEast to proceed with due diligence to obtain Commission and other regulatory approvals for the Project and to construct and place the Project into service on a timely basis.  For similar reasons, if DRN were to obtain final relief from this Court resulting in the invalidation and injunction of the Commission's process for reviewing and granting or denying Certificate applications, PennEast would suffer significant adverse economic and practical effects as the Project's developer and owner.  *See* Terranova Aff. ¶ 1.  Such harms could include (but are not limited to) delay and potential interruption of the current schedule for construction or operation, lost revenue, and potential negative effects on PennEast's ability to meet contractual obligations under binding agreements with shippers. *Id*. ¶¶ 15-16.

PennEast also readily satisfies the causation and redressability prongs of standing. Because PennEast is effectively an "object of the [agency] action . . . at issue," there can be "little question that the action" Petitioner seeks—i.e., invalidating and enjoining the Commission's process for review of the PennEast Project Certificate application—will "cause[] [PennEast] injury, and that a judgment preventing . . . the action will redress it." *Sierra Club*, 292 F.3d at 900 (quoting *Lujan*, 504 U.S. at 561-62).  Conversely, a judgment denying DRN's requested relief will avoid those harms to PennEast.

**B.**    **PennEast Satisfies All The Rule 24(a)(2) Requirements.**

1.    The Motion Is Timely.

The timeliness of a Rule 24(a)(2) motion to intervene must "be judged in consideration of all the circumstances." *Smoke v. Norton,* 252 F.3d 468, 471 (D.C. Cir. 2001) (quoting *United States v. AT&T,* 642 F.2d 1285, 1295 (D.C. Cir. 1980)). "Though the time elapsed since the inception of the suit is relevant, measuring the length of time passed is not in itself the determinative test because [courts] do not require timeliness for its own sake." *Roane v. Leonhart,* 741 F.3d 147, 151 (D.C. Cir. 2014) (internal citations and quotations omitted). "Instead, the requirement of timeliness is aimed primarily at preventing potential intervenors from unduly disrupting litigation, to the unfair detriment of the existing parties." *Id.* "Thus, even where a would-be intervenor could have intervened sooner, in assessing timeliness a court must weigh whether any delay in seeking intervention unfairly disadvantaged the original parties." *Id.* (internal quotations and alterations omitted); *see also 100Reporters LLC v. U.S. Dep't of Justice*, 307 F.R.D. 269, 274-75 (D.D.C. 2014).

PennEast filed this motion to intervene promptly following DRN's initiation of this suit (on March 2, 2016), and five business days after the Federal Defendants submitted their Motion to Dismiss—comfortably within the period this Court has held to be timely. *See Navistar, Inc. v. Jackson*, 840 F. Supp. 2d 357, 361 (D.D.C. 2012) (Rule 24(a)(2) motion to intervene was timely when filed "nearly two and one half months after the Complaint was initially filed . . . [and] less than two weeks after Defendants filed their responsive pleadings, and before any discovery or substantive progress had been made in the case"); *Me-Wuk Indian Cmty. v. Kempthorne*, 246 F.R.D. 315, 319 (D.D.C. 2007) (Rule 24(a)(2) motion to intervene was timely when "filed less than three months after the complaint"); *Bible Way Church of Our Lord Jesus Christ World*

*Wide, Inc. v. Showell*, 260 F.R.D. 1, 4 (D.D.C. 2009) (Rule 24(a)(2) motion to intervene was timely when "filed fifteen months after the commencement of the litigation" where "discovery ha[d] not yet begun").

PennEast's intervention would not delay these proceedings or prejudice the parties. Other than the Complaint itself and Federal Defendants' motion to dismiss, the parties have not made any other substantive filings.  To PennEast's knowledge, the parties have not yet convened a discovery conference pursuant to Federal Rule of Civil Procedure 26(f).  As reflected in its proposed Motion to Dismiss filed as an attachment to this Motion, PennEast joins in the Federal Defendants' arguments for dismissal in significant part, and has limited its additional briefing to arguments that are complimentary to (not duplicative of) the Federal Defendants' position.  To ensure the Court and the parties have sufficient time to consider its arguments, PennEast is contemporaneously lodging its motion to dismiss with the Court, and is seeking leave to defer filing its answer in intervention until such time as the Federal Defendants are required to answer, or upon order of this Court. *See* Exhibit D to Unopposed Motion of PennEast Pipeline Company, LLC to Intervene as Defendant and to Defer Filing an Answer-in-Intervention; *infra* pp. 15-16.

>    2.    <u>PennEast Has a Substantial Legal Interest in this Action.</u>

For the same reasons that PennEast has Article III standing, it also has a substantial legal interest in this action for purposes of Rule 24(a)(2).  *See Jones v. Prince George's Cty.*, 348 F.3d 1014, 1018-19 (D.C. Cir. 2003) (party who "has suffered a cognizable injury sufficient to establish Article III standing . . . also has the requisite interest under Rule 24(a)(2)"); *Forest Cty. Potawatomi Cmty.*, 2016 WL 1465324, at *3 n.4 ("when a putative intervenor has a 'legally protected' interest under Rule 24(a), it will also meet constitutional standing requirements, and *vice versa*").  As discussed above, PennEast has a direct economic interest in the outcome of this

litigation, because Plaintiffs seek to prevent the Commission from completing its assessment of, and potentially granting, PennEast's application for a Certificate authorizing it to construct and eventually operate the PennEast Project. *See, e.g.*, *Fund For Animals*, 322 F.3d at 733-35 (finding interest factors were met where intervenor would lose revenue if federal agency was unsuccessful in defending appeal); *Dimond v. District of Columbia*, 792 F.2d 179, 192 (D.C. Cir. 1986) (holding that the threat of economic loss satisfies the interest requirement under Rule 24(a)(2)).

        3.      <u>DRN's Requested Relief Would Impair PennEast's Interests.</u>

As discussed above, DRN's requested declaratory and injunctive relief would directly impair PennEast's substantial interests. *See Wildearth Guardians v. Salazar*, 272 F.R.D. 4, 13 (D.D.C. 2010) (noting that the impairment inquiry "is not a rigid one"; rather, "courts look to the 'practical consequences' of denying intervention"). If DRN's request for relief is granted, then the Commission may not be able to proceed with its review process for the PennEast Project. DRN has asked this Court to enjoin the Commission from reviewing and approving *any* Certificate applications, including PennEast's specifically. Even a temporary delay in the process of reviewing PennEast's application could have real adverse effects on the Project's construction schedule, with harms to PennEast's revenue and ability to meet commitments to customers who have signed binding precedent agreements for gas to be transported on the pipeline. *See* Terranova Aff. ¶¶ 15-16.

Plaintiffs also ask this Court to declare facially unconstitutional not only the eminent domain authority that Congress conferred on all Certificate holders in 15 U.S.C. § 717f(h), but also the Natural Gas Act's preemptive effect on state and local laws that would conflict with or otherwise impede Commission-authorized projects. Granting either such relief would remove

essential legal protections necessary for PennEast to construct and operate the proposed pipeline project, for instance by preventing PennEast from obtaining rights of entry and easements necessary to conduct surveys of the pipeline route and eventually to begin construction.  These injuries, which would be caused by the relief Plaintiffs seek in this litigation, clearly satisfy the impairment prong for intervention as-of-right.

    4.    <u>The Existing Parties Cannot Adequately Represent PennEast's Interests.</u>

The existing parties cannot adequately represent PennEast's interests. The adequate-representation prong is "not onerous," *Dimond*, 792 F.2d at 192, as a proposed intervenor need only show that representation of its interests "'may be' inadequate," with "the burden of making that showing . . . treated as minimal." *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972).  PennEast easily clears that bar, where the existing defendants are a federal agency (the Commission) and its officials.  "[G]overnmental entities do not adequately represent the interests of aspiring intervenors" because an agency's obligation "is to represent the interests of the American people" writ large, not the more particular interests of a company or organization. *Fund for Animals*, 322 F.3d at 736; *see also Nat'l Farm Lines v. ICC*, 564 F.2d 381, 384 (10th Cir. 1977) ("[This is a] familiar situation in which the governmental agency is seeking to protect not only the interest of the public but also the private interest of the petitioners in intervention, a task which is on its face impossible.").  Courts thus "look skeptically on government entities serving as adequate advocates for private parties." *Crossroads Grassroots Policy Strategies v. FEC*, 788 F.3d 312, 321 (D.C. Cir. 2015).[5]

---

[5] To the extent that there may be a "partial congruence of interests" between PennEast and the Federal Defendants, "that does not guarantee the adequacy of representation." *Fund for Animals*, 322 F.3d at 737.  As the D.C. Circuit has recognized, "interests need not be wholly 'adverse' before there is a basis for concluding that existing representation of a 'different' interest may be inadequate." *Nuesse v. Camp,* 385 F.2d 694, 703 (D.C. Cir. 1967).  And even if there is some

PennEast's interests in this matter are distinct from the Commission's regulatory interests. The Commission's overarching interests are the proper administration of the Natural Gas Act, within the procedural requirements of the NEPA and other applicable laws. PennEast's interests, on the other hand, relate to advancing its business objectives, serving the best interests of its parent companies' shareholders, constructing and eventually operating the PennEast Project, and meeting contractual obligations to its customers. For example, because PennEast would incur significant costs and logistical disruption from a delay in the approval and eventual construction and operation of the Project, it would have a greater interest than, and potentially divergent litigation strategy from, the Commission in opposing any potential delay associated with these proceedings. If PennEast is not permitted to intervene in this case, it will have no other means of representing its interests against the issues raised by DRN.

PennEast's participation will be helpful to the Court. Among other things, PennEast is in a better position than the Commission to discuss the harm to the PennEast Project, and to PennEast, that would arise from any relief that could result in invalidating and enjoining the Commission's review and approval process for the PennEast Certificate in particular. PennEast will endeavor to coordinate with the Commission, as well as with any other potential defendant-intervenors, to avoid duplicative briefing and to ensure that PennEast's participation will be of assistance to the Court.

## II.   ALTERNATIVELY, PENNEAST SHOULD BE GRANTED PERMISSION TO INTERVENE UNDER RULE 24(b).

In the alternative, this Court should grant PennEast permission to intervene under Rule 24(b).  *See* Fed. R. Civ. P. 24(b)(1) ("On timely motion, the court may permit anyone to

---

"tactical similarity of the present legal contentions of the [parties]" this "does not assure adequacy of representation or necessarily preclude the [intervenor] from the opportunity to appear in [its] own behalf." *Id*.

intervene who . . . has a claim or defense that shares with the main action a common question of law or fact.").  A putative intervenor must establish three criteria before it may litigate a claim on the merits under Rule 24(b)(1): "(1) an independent ground for subject matter jurisdiction; (2) a timely motion; and (3) a claim or defense that has a question of law or fact in common with the main action."  *EEOC v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998).  Additionally, the court "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."  Fed. R. Civ. P. 24(b)(3).

This is not a restrictive standard: "Rule 24(b) . . . provides basically that anyone may be permitted to intervene if his claim and the main action have a common question of law or fact," *Nuesse*, 385 F.2d at 704, so long as intervention would not "unduly delay or prejudice the rights of the original parties."  *Acree v. Republic of Iraq*, 370 F.3d 41, 49 (D.C. Cir. 2004), *abrogated on other grounds by Republic of Iraq v. Beaty*, 556 U.S. 848 (2009).  The D.C. Circuit has read the rule broadly and "eschewed strict readings of the phrase 'claim or defense.'"  *Nat'l Children's Ctr.*, 146 F.3d at 1046.[6]  Where an intervenor seeks "to defend against [the Petitioner's] allegation," it is "clear that the [intervenor's] claims [or defenses] are sufficiently related to the main claims . . . such that an independent ground for subject matter jurisdiction exists."  *Butte County v. Hogen*, No. 08-519, 2008 WL 2410407, at *2 (D.D.C. June 16, 2008).

As explained above, PennEast's intervention here is timely and would not prejudice the rights of the original parties or unduly cause delay.  *Supra* pp. 9-10.  Moreover, PennEast's defenses have "a . . . question of law or fact" in common with the claims Plaintiffs assert: PennEast defends the constitutionality of the Commission's review and approval process for

---

[6] In contrast to the mandatory intervention under Rule 24(a)(2), the D.C. Circuit has never held that a party must demonstrate Article III standing for permissive intervention. *See Defenders of Wildlife v. Perciasepe*, 714 F.3d 1317, 1327 (D.C. Cir. 2013) (noting that this is an open question).  In any event, PennEast has Article III standing here.

14

federally mandated Certificates, in opposing DRN's request for an order invalidating and enjoining that scheme.  As previously indicated, PennEast will coordinate with other intervenors and the Commission to avoid duplicative briefing.  *See, e.g.*, *New York v. Abraham*, 204 F.R.D. 62, 66-67 (S.D.N.Y. 2001).

In the event the Court denies intervention as-of-right , the Court should grant PennEast permissive intervention.

### III.   THIS COURT SHOULD GRANT PENNEAST LEAVE TO DEFER FILING AN ANSWER-IN-INTERVENTION UNTIL SUCH TIME AS THE FEDERAL DEFENDANTS ANSWER

In addition, PennEast seeks leave to defer filing an answer-in-intervention until such time as the Federal Defendants file their answer, or such other time as is set by order of this Court.  As noted above, both Federal Defendants and Plaintiffs consent to this relief.

Federal Rule of Civil Procedure 24(c) and  this Court's Local Civil Rule 7(j) state that a motion to intervene should "be accompanied by an original of the pleading setting forth the claim or defense for which intervention is sought."  But "[t]he Court may 'permit[] a degree of flexibility with [Rule 24(c)'s] technical requirements' when the 'position of the movant is apparent from other filings.'"  *Ying Qing Lu v. Lezell*, No. CIV.A. 11-1815 JEB, 2012 WL 1929904, at *1 (D.D.C. May 29, 2012) (quoting *Tachiona ex rel. Tachiona v. Mugabe,* 186 F.Supp. 2d 383, 393 n. 8 (S.D.N.Y.2002)); *see also Ranbaxy Labs., Ltd v. Burwell*, No. 1:14-cv-01923-BAH, Minute Order (Jan. 30, 2015) (Howell, J.) (granting motion to intervene and request for leave to defer filing an answer-in-intervention until federal defendants were required to answer).[7]  Further, under Federal Rule 6(b), this Court may extend the time when an act may or

---

[7] *See also Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 474 (9th Cir. 1992) ("Courts, including this one, have approved intervention motions without a pleading where the court was otherwise apprised of the grounds for the motion."); 7C Charles A. Wright et al., *Fed. Prac. &*

must be done with or without motion or notice.  *See* Fed. R. Civ. P. 6(b)(1)(A) ("When an act may or must be done within a specified time, the court may, for good cause, extend the time . . . with or without motion or notice if the court acts, or if a request is made, before the original time or its extension expires . . . .").  PennEast's interest in this suit is apparent from this memorandum and accompanying affidavit.

Moreover, filing an answer-in-intervention would serve no practical purpose and poses no risk of delay or inconvenience to the Court or the other parties.  The Federal Defendants have already moved to dismiss the Complaint in its entirety, an act that automatically postponed the Commission's deadline for filing an answer.  *See* Fed. R. Civ. P. 12(a)(4).  PennEast stands prepared to file an answer on the same schedule as the Federal Defendants, at such time as this Court or the Rules require the Federal Defendants to answer.

For the avoidance of doubt, if the Court prefers for any reason that PennEast file its answer-in-intervention now, or if the Court is not prepared to grant PennEast leave to defer filing that answer, PennEast is prepared to file an answer immediately.  Thus, PennEast's request to defer filing of an answer should not be an impediment to the Court's decision whether to grant intervention.

## CONCLUSION

For the foregoing reasons, PennEast respectfully requests that the Court grant its Unopposed Motion to Intervene as Defendants and grant leave to defer filing an answer until such time as Federal Defendants file their answer, or such other time as is established by order of this Court.

---

*Proc. Civ.* § 1914 (3d ed. 2015) (noting that "a number of [] cases have refused to require strict compliance [with Rule 24(c)]" and lamenting "needlessly literal reading[s] of the rule").

Dated: May 10, 2016                Respectfully submitted,


                                   */s/ Michael B. Wigmore*
                                   Michael B. Wigmore (D.C. Bar No. 436114)
                                   Jeremy C. Marwell (D.C. Bar No. 1000299)
                                   VINSON & ELKINS LLP
                                   2200 Pennsylvania Avenue, NW
                                   Suite 500 West
                                   Washington, DC 20037
                                   Phone: 202.639.6500
                                   Email: mwigmore@velaw.com


                                   *Attorneys for PennEast Pipeline Company, LLC*


*Of Counsel*

Frank H. Markle                              James D. Seegers
PENNEAST PIPELINE COMPANY, LLC               Sabina Dugal Walia
460 North Gulph Road                         VINSON & ELKINS LLP
King of Prussia, PA 19406                    1001 Fannin St.
Phone: 610.768.3625                          Suite 2500
Email: marklef@ugicorp.com                   Houston, TX 77002
                                             Phone: 713.758.2939
                                             Email: jseegers@velaw.com

## **CERTIFICATE OF SERVICE**

I, Jeremy C. Marwell, hereby certify that a copy of the foregoing document, filed through the CM/ECF system, will be sent electronically to the registered participants as identified on the Notice of Electric Filing (NEF) and paper copies shall be served by first class mail postage prepaid on all counsel who are not served through the C/M ECF system on May 10, 2016.

*/s/ Jeremy C. Marwell*
Jeremy C. Marwell