# Exhibit A

# Affidavit of Peter G. Terranova

**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DELAWARE RIVERKEEPER NETWORK, *et al.*, )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>FEDERAL ENERGY REGULATORY COMMISSION, *et al.*, )<br>)<br>Defendants. )<br>) | Civil Action No. 1:16-cv-00416-TSC |

## AFFIDAVIT OF PETER G. TERRANOVA

I, Peter G. Terranova, hereby depose and state as follows:

1. I am the Chairman of the Board of Managers of PennEast Pipeline Company, LLC ("PennEast"). In that role, I have ultimate management responsibility for the PennEast Project ("PennEast Project" or "Project"), which is owned and being developed by PennEast.

2. PennEast is a limited liability company organized and existing under the laws of the State of Delaware. PennEast's principal place of business is One Meridian Boulevard, Suite 2C01, Wyomissing, Pennsylvania 19610. PennEast is authorized to conduct business as a foreign limited liability company in the State of New Jersey and the Commonwealth of Pennsylvania in order to own and operate natural gas transmission facilities and engage in open-access transportation services within these states.

3. As Chairman, I am directly involved with the development and planning of the PennEast Project, including the regulatory process and approvals needed to implement and construct the PennEast Project.

1

## THE PENNEAST PROJECT COMMISSION APPLICATION

4.      Under Section 7(c) of the Natural Gas Act, a natural-gas company, or a person which will become a natural gas company when it begins transporting natural gas in interstate commerce following the completion of any proposed construction, may not undertake the construction of any jurisdictional natural gas facilities or operate any such facilities unless it has received a certificate of public convenience and necessity issued by the Federal Energy Regulatory Commission ("FERC" or "Commission") authorizing such acts or operations. *See* 15 U.S.C. § 717f(c).

5.      On September 24, 2015, PennEast filed with the Commission an application for a Certificate of Public Convenience and Necessity ("Certificate") requesting authorization for PennEast to construct and operate an interstate natural gas pipeline and related facilities that constitute the PennEast Project.  Because PennEast is a new company and has not previously provided service in interstate commerce, PennEast's application included requests for an open-access blanket certificate under Part 284, Subpart G of the Commission's regulations and a blanket construction certificate under Part 157, Subpart F of the Commission's regulations.

6.      PennEast's Certificate application is currently pending before the FERC in Docket No. CP15-558-000.

7.      To facilitate the Project and to identify and address environmental and landowner concerns early in the Certificate process, PennEast participated in the Commission's National Environmental Policy Act ("NEPA") pre-filing review process before filing its Certificate application.  Since October 2014, PennEast has participated in more than 200 meetings with public officials and non-governmental organizations.  In addition to these meetings, PennEast held four formal open house meetings attended by Commission Staff in

November 2014 to provide stakeholders with updated information regarding the route and Project planning. PennEast also hosted 15 informational sessions for affected landowners with information regarding the route and Project planning that had changed based on input received during the pre-filing review process. In February 2015, PennEast participated in five Commission Staff-hosted, public scoping meetings in Bethlehem, Jim Thorpe, and Wilkes-Barre, Pennsylvania, as well as West Trenton, and Hampton, New Jersey, respectively, to garner input from the public and interested agencies on the Project. Further, as part of the pre-filing review process, PennEast responded to hundreds of comments filed by interested stakeholders.

8.      As indicated by the above, the pre-filing review for the PennEast Project was an iterative and interactive process among PennEast, the Commission Staff, other state and federal agencies reviewing certain aspects of the Project, and Project stakeholders, which, due to the feedback from open houses, scoping meetings, and public comments filed with the Commission, led to the evaluation of many potential issues and route relocations even before PennEast submitted its formal Certificate application with the Commission. PennEast's pre-filing review process resulted in its evaluation of over 100 route alternatives and above-ground facility site locations, the reduction of the Project's anticipated environmental impacts, and improvements in the Project's proposed mitigation measures.

## THE PENNEAST PROJECT FACILITIES

9.      The PennEast Project is a proposed new greenfield pipeline infrastructure project that consists of approximately 118 miles of 36-inch diameter mainline transmission pipeline originating in Luzerne County, Pennsylvania, and extending to Mercer County, New Jersey. The Project will traverse Luzerne, Carbon, Northampton, and Bucks Counties in Pennsylvania

and Hunterdon and Mercer Counties in New Jersey. The Project will also include one lateral pipeline segment in Northampton County, Pennsylvania, two laterals in Hunterdon County, New Jersey, one new compressor station in Carbon County, Pennsylvania, and various associated above-ground facilities, including interconnects, launchers, receivers, and mainline block valves.

10. The Project's various receipt-point interconnections in the eastern Marcellus region include interconnections with Transcontinental Gas Pipe Line Company, LLC ("Transco") and gathering systems operated by UGI Energy Services, LLC, Williams Partners L.P., and Energy Transfer Partners L.P., all in Luzerne County, Pennsylvania. The Project extends from these receipt points to various delivery point interconnections in the heart of major northeastern natural gas-consuming markets, including interconnections with UGI Central Penn Gas, Inc. in Carbon County, Pennsylvania; UGI Utilities, Inc. and Columbia Gas Transmission, LLC in Northampton County, Pennsylvania; and Elizabethtown Gas, NRG REMA, LLC, Texas Eastern Transmission, LP, and Algonquin Gas Transmission, LLC in Hunterdon County, New Jersey. The terminus of the Project will be located at a delivery point with Transco in Mercer County, New Jersey.

11. The total capacity of the PennEast Project is 1,107,000 dekatherms per day ("Dth/d").

## MARKET NEED FOR THE PENNEAST PROJECT

12. PennEast developed the Project in response to growing market demand in New Jersey, Pennsylvania, and New York and interest from shippers that require transportation capacity to accommodate increased demand for, and receipts of, natural gas into the region. The Project is designed to bring lower-cost natural gas from multiple upstream supply sources

located at various receipt point interconnections in the Marcellus Shale region in eastern Pennsylvania to homes and businesses in New Jersey, Pennsylvania, New York and adjacent states.

13.     An additional supply of natural gas to the region will provide a benefit to consumers, local distribution companies, electric generators and other end-use market participants by enhancing competition among suppliers and pipeline transportation providers. Moreover, the PennEast Project will provide shippers additional opportunities to buy and sell supplies and to transport natural gas to where the gas is needed and valued most.

14.     PennEast held an Open Season for the Project from August 11, 2014 to August 29, 2014, and has executed long-term, binding precedent agreements with 12 shippers for approximately 90% of the firm transportation capacity to be created by the Project.[1] These shippers include major Northeastern natural gas and electric utilities and transportation companies, as well as natural gas producers and natural gas-fired electric generators.

**ADVERSE EFFECTS ON PENNEAST FROM
POTENTIAL DELAY IN PROCESSING COMMISSION APPLICATION**

15.     Any material delay in the Commission's current schedule for processing PennEast's pending Certificate application could have serious repercussions for PennEast and the Project.  To meet its firm capacity commitments to Project shippers, PennEast must proceed with diligence to obtain Commission approval and to construct the Project facilities to meet the projected second quarter 2018 service commencement date.  To conduct such diligence, PennEast needs, among other things, physical access to properties along the proposed pipeline

---

[1] The shippers are: New Jersey Natural Gas Company; PSEG Power LLC; Texas Eastern Transmission, LP; South Jersey Gas Company; Consolidated Edison Company of New York, Inc.; Pivotal Utility Holdings, Inc. (d/b/a Elizabethtown Gas); UGI Energy Services, LLC; Cabot Oil & Gas Corporation; Talen Energy Marketing, LLC; Enerplus Resources (USA) Corporation; Warren Resources, Inc.; and NRG Rema LLC.

route, to conduct surveys and gather information necessary before construction can begin. PennEast has been unable to obtain physical access to certain properties for that purpose through negotiations with landowners. Thus, PennEast will rely on exercising the right of eminent domain in 15 U.S.C. § 717f, that is available once the Certificate Order issues. Delays by the Commission in processing the Certificate application will delay PennEast's ability to conduct this essential preparatory work.

16. Delays in the Commission's processing and potential granting of the Certificate can have significant adverse effects on the Project's projected completion and in-service dates. The construction of natural gas pipelines is accomplished in linear segments, with a number of different crews performing different functions as part of the overall pipeline spread. Each crew follows the one ahead of it from one end of a spread (i.e., each segment of a pipeline being built) to the other end. Thus delays in starting construction generally affect all crews. Moreover, construction may be subject to seasonal restrictions or moratoria, for instance to avoid effects on particular animal or plant species found on the project route, or to accommodate other concerns by affected landowners, states, or municipalities. As a result, even a short delay in beginning construction can have a non-linear effect on the projected in-service date.

I state under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on May 10, 2016.

_____
Peter G. Terranova