## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                            )

Delaware Riverkeeper Network, *et al.*,   )
                            )

       Plaintiffs,           )
                            )

       v.                 )   Civil Action No.: 16-cv-416 (TSC)
                            )

Federal Energy Regulatory       )
Commission*, et al.*,            )
                            )

       Defendants.        )
_____ )

## FEDERAL ENERGY REGULATORY COMMISSION'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION AND FAILURE TO STATE A CLAIM

Robert H. Solomon
Solicitor

Lisa B. Luftig
Ross R. Fulton
Attorneys

For Respondent
Federal Energy Regulatory
 Commission
Washington, D.C.  20426

July 7, 2016

# TABLE OF CONTENTS

**PAGE**

INTRODUCTION ...............................................................................1

ARGUMENT ....................................................................................3

I.   Riverkeeper Lacks Standing Because Its Claims Are Speculative And Not Redressable ........................................................................3

    A.   Riverkeeper's Structural Bias Challenge Requires A Concrete Harm ...................................................................................4

    B.   The Alleged Past Harms Suffered by Riverkeeper Do Not Support Standing ..............................................................................8

    C.   Riverkeeper's Alleged Harms Would Not Be Remedied By Declaring The Budget Act Unconstitutional ..................................9

II.   Riverkeeper Fails To State A Claim For Which Relief Can Be Granted ................................................................................ 11

    A.   Approving A Natural Gas Pipeline Does Not Increase the Commission's Budget ................................................................ 12

        1.   Commission Spending Is Set By Congress ........................... 12

        2.   Riverkeeper's Challenges To Congressional Oversight Of The Commission's Budget Are Speculative At Best ...... 15

    B.   Speculative Concerns That The Commission Must Approve Pipelines To Secure Long-Term Funding Are Too Remote ......... 18

    C.   Riverkeeper Cannot Show An Intolerably High Risk Of Bias ................................................................................. 21

    D.   Riverkeeper Cannot State A Due Process Claim Related To Tolling Orders ......................................................................... 23

CONCLUSION…….......................................................................... 25

i

# TABLE OF AUTHORITIES

**COURT CASES:**                                                    **PAGE**

*Arpaio v. Obama*,
  797 F.3d 11 (D.C. Cir. 2015)................................................. 6, 8, 9, 11, 22

*Ashcroft v. Iqbal*,
  556 U.S. 66 (2009)..................................................... 21, 22, 23

*Cal. Co. v. Fed. Power Comm'n*,
  411 F.2d 720 (D.C. Cir. 1969).................................................. 24

*Cal. for Renewable Energy v. DOE*,
  860 F. Supp. 2d 44 (D.D.C. 2012)............................................9

*Caperton v. A.T. Massey Coal Co.*,
  556 U.S. 868 (2009)............................................. 11, 20, 21, 22

*City of L.A. v. Lyons*,
  461 U.S. 95 (1983)......................................................9

*Clapper v. Amnesty Int'l*,
  133 S. Ct. 1138 (2013)..................................................9

*Cureton v. U.S. Marshal Serv.*,
  322 F. Supp. 2d 23 (D.D.C. 2004)............................................3

*Del. Riverkeeper Network v. FERC*,
  No. 13-1015 (D.C. Cir. Feb. 6, 2013)....................................... 25

*Doolin Sec. Sav. Bank, FBS v. FDIC*,
  53 F.3d 1395 (4th Cir. 1995) ...................................... 18, 19, 22

*Earth Island Inst. v. U.S. Forest Serv.*,
  351 F.3d 1291 (9th Cir. 2003) ................................................ 20

_____

***Cases chiefly relied upon are marked with an asterisk.***

# TABLE OF AUTHORITIES

**COURT CASES (continued):**                                            **PAGE**

*FERC v. Elec. Power Supply Ass'n,*
    136 S. Ct. 760 (2016)................................................................ 16

*Ga. Indus. Grp. v. FERC,*
    137 F.3d 1358 (D.C. Cir. 1998).............................................. 11

*Gen. Am. Oil Co. of Tx. v. Fed. Power Comm'n,*
    409 F.2d 597 (5th Cir. 1969) .................................................. 24

*Hammond v. Baldwin,*
    866 F.2d 172 (6th Cir. 1989) ............................................. 5, 19

*In re: Delaware Riverkeeper Network,*
    No. 15-1052 (D.C. Cir. Mar. 19, 2015)................................. 25

*Kaempe v. Myers,*
    367 F.3d 958 (D.C. Cir. 2004)................................................ 15

*Kokajko v. FERC,*
    837 F.2d 524 (1st Cir. 1988)................................................... 24

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992).................................................................9

*Metcalf v. Nat'l Petroleum Council,*
    553 F.2d 176 (D.C. Cir. 1977)........................................... 6, 10

*Minisink Residents for Envtl. Pres & Safety v. FERC,*
    762 F.3d 97 (D.C. Cir. 2014)............................................. 7, 10

*\*No Gas Pipeline v. FERC,*
    756 F.3d 764 (D.C. Cir. 2014)........................................ 3, 4, 23

*S.C. Pub. Util. Auth. v. FERC,*
    762 F.3d 41 (D.C. Cir. 2014)................................................. 17

# TABLE OF AUTHORITIES

**COURT CASES (continued):**                                    **PAGE**

*Sierra Club v. FERC*,
   No. 14-1275, slip op. (D.C. Cir. Jun. 28, 2016) ................................... 5, 6

*Sierra Forest Legacy v. Rey*,
   577 F.3d 1015 (9th Cir. 2009) ...................................................5

*Spokeo, Inc. v. Robins*,
   136 S.Ct. 1540 (2016)...............................................................5

*\*Summers v. Earth Island Inst.*,
   555 U.S. 488 (2009)....................................................... …5, 6, 8

*Town of Dedham v. FERC*,
   2015 WL 4274884 (D. Mass. July 15, 2015) ......................................... 24

*Tumey v. Ohio*,
   273 U.S. 510 (1927)............................................................... 21

*United Church of Med. Ctr. v. Med. Ctr. Comm'n*,
   689 F.2d 693 (7th Cir. 1982) ........................................... 5, 19, 22

*United States v. Benitez-Villafuerte*,
   186 F.3d 651 (5th Cir. 1999) ................................................. 18

*Utica Packing Co. v. Block*,
   781 F.2d 71 (6th Cir. 1986) .................................................. 22

*Ward v. Village of Monroeville*,
   409 U.S. 57 (1972)................................................................ 23

*Williams v. Lew*,
   819 F.3d 466 (D.C. Cir. 2016)....................................................5

*Williams v. Pa.*,
   No. 15-5040, slip op. (June 9, 2016) ................................. 19, 22

# TABLE OF AUTHORITIES

**ADMINISTRATIVE CASES:**                                          **PAGE**

*Certification of New Interstate Nat'l Gas Pipeline Facilities*,
    88 FERC ¶ 61,277 (1999), *clarified*, 90 FERC ¶ 61,128 (1999),
    *further clarified*, 92 FERC ¶ 61,094 (2000) ...............................................7

*Chestnut Ridge Storage LLC*,
    139 FERC ¶ 61,149 (2012) .................................................................... 10

*Jordan Cove Energy Project, L.P.*,
    154 FERC ¶ 61,190 (2016) .........................................................................7

**STATUTES:**

Anti-Deficiency Act

    31 U.S.C. § 1341(a)(1)(A) ........................................................................ 14

Department of Energy Organization Act

    42 U.S.C. § 7171(c) .................................................................................. 21

    42 U.S.C. § 7171(j) .............................................................. 12, 13, 14, 15, 20

National Environmental Policy Act

    42 U.S.C. §§ 4321-4370h ..........................................................................7

Natural Gas Act

    Section 7(e), 15 U.S.C. § 717f(e) ......................................................... 7, 10

    Section 19, 15 U.S.C. § 717r .....................................................................3

    Section 19(a), 15 U.S.C. § 717r(a) ......................................................... 24

    Section 19(b), 15 U.S.C. § 717r(b) .............................................. 11, 24, 25

# TABLE OF AUTHORITIES

**STATUTES (continued):**                                    **PAGE**

Omnibus Budget Reconciliation Act of 1986

    42 U.S.C. § 7178(a)(1) ............................................................ 13

    42 U.S.C. § 7178(e) ................................................................ 14

    42 U.S.C. § 7178(f)...................................................... 14, 15, 20

**REGULATIONS:**

    18 C.F.R. §§ 157.1-157.22 ......................................................6

## INTRODUCTION

The opposition brief filed by Plaintiffs Delaware Riverkeeper Network and Maya van Rossum (collectively, Riverkeeper) serves only to confirm that Riverkeeper cannot demonstrate standing or a valid claim for relief.  Approving a natural gas pipeline does not increase the Federal Energy Regulatory Commission's (Commission) budget.  So it cannot give rise to a structural bias claim.  And concerns about the possible future approval of a pending pipeline application do not provide standing for Riverkeeper's speculative harms.

The declarations belatedly submitted by Riverkeeper only underscore that Riverkeeper lacks standing for its hypothetical claims.  Nearly every declarant references the PennEast pipeline adjudication.  But that pipeline application is still pending before the Commission.  Even if it is approved, the route or conditions for that pipeline could differ from PennEast's application.  This could alter or negate any purported harms.  Moreover, Riverkeeper cannot rely on purported past injury to justify future injunctive relief.  Nor can it show how finding the Budget Act unconstitutional would alter how the Commission determines whether a pipeline is in the public convenience and necessity – as it must under the Natural Gas Act.

Riverkeeper's opposition brief also confirms that it could never state a claim upon which relief may be granted.  Riverkeeper disavows (and so waives) any actual bias challenge – making any claims regarding actual bias irrelevant.

Instead, Riverkeeper only alleges a facial challenge that the Commission is structurally biased based on the Budget Act's funding scheme.  Such a claim of institutional bias, at a minimum, requires proof that a Commission pipeline approval substantially increases the Commission's funding.  Yet Riverkeeper cannot establish such a claim for two unassailable statutory reasons:

- Pipeline approvals do not increase Commission funding; and

- Congress – not the Commission – sets Commission funding levels.

Riverkeeper cannot contend a factual dispute exists regarding whether approving a pipeline increases Commission funding when federal law explicitly provides otherwise.  Instead, Riverkeeper resorts to far-reaching speculation about the Commission's and Congress's motives.  But such imaginings are too remote to demonstrate structural bias.  Not only are they contradicted by law, but they conflict with the Commission's presumed (and demonstrated) honesty and integrity.

At bottom, Riverkeeper's opposition fails to remedy the serious flaws in its complaint.  Riverkeeper's true objective – to prevent the Commission from approving natural gas pipelines – is made transparent by its overwhelming focus on the pending PennEast application.  Riverkeeper will have ample opportunity to challenge the PennEast certificate request in the course of that proceeding.

2

But how pipelines should be approved is a policy choice for Congress –

reflected in its statutory delegation to the Commission.  Riverkeeper's

overreaching claims question not just the Commission's funding for natural gas

pipeline regulation – but the Commission's entire funding structure and the

funding of over 25 federal departments and agencies that collect user-fees.

Riverkeeper cannot use this Court in a surreptitious attempt to pursue its preferred

policies.  Its claims must be dismissed.

## ARGUMENT

## I.    Riverkeeper Lacks Standing Because Its Claims Are Speculative And Not Redressable

In *No Gas Pipeline v. FERC*, 756 F.3d 764 (D.C. Cir. 2014), the D.C.

Circuit distinguished between claims of actual and structural bias against the

Commission.  A petitioner asserting bias against the Commission's consideration

of an individual pipeline must abide by the Natural Gas Act's exclusive review

provision.  *Id.* at 770 (petitioner must raise the issue of bias to the Commission

before the Commission certifies a pipeline, challenge on rehearing that the

Commission decision is not based on record evidence, and seek review of the

Commission orders in the court of appeals) (citing 15 U.S.C. § 717r).

In its response, Riverkeeper disavows – and so waives – any actual bias

challenge to the Commission's consideration of the PennEast pipeline application

or any other pipeline application.  *See Cureton v. U.S. Marshal Serv.*, 322 F. Supp.

3

2d 23, 27 (D.D.C. 2004) ("When a plaintiff files a response to a motion to dismiss

but fails to address arguments made by the defendant, the court may treat those

arguments as conceded, even when the result is dismissal of the case.") (citations

omitted).  Riverkeeper instead limits itself to a facial challenge – only asking the

Court to decide whether the Commission "operates under an impermissible

temptation of bias, or the appearance of bias" resulting from the Budget Act's

funding scheme.  Riverkeeper Opposition ("Opp.") at 8.  The *No Gas* court

explained that, if the claim is that the Commission is structurally biased based

upon the Budget Act's funding mechanism, it is not directly reviewable in the

court of appeals.  *No Gas Pipeline*, 756 F.3d at 769.  Such a claim could, in theory,

only be brought in district court.  *Id.*  But such a structural bias claim still requires

the challenging party to establish standing.  *Id.* at 770.  And as detailed in the

Commission's Motion to Dismiss, Riverkeeper's complaint fails to do so.  *See*

FERC Mot. at 20-30.

A.     **Riverkeeper's Structural Bias Challenge Requires A Concrete Harm**

Rather than demonstrate a required injury-in-fact, Riverkeeper responds that

its due process challenge does not require such concrete harm.  Opp. at 10.  Even

assuming that Riverkeeper has a cognizable liberty or property interest to bring a

due process claim – a claim intervenor has disputed – *see* PennEast Mot. at 8-16

(detailing why Riverkeeper's complaint should be dismissed for lack of such a

cognizable interest), such a claim is incorrect.  The Constitution requires that a party adequately allege that its purported due process violation is tethered to a concrete injury.  *See Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009) (although causation and redressability are relaxed for a procedural claim, a concrete injury remains a "hard floor"); *Sierra Club v. FERC*, No. 14-1275, slip op. at 9 (D.C. Cir. Jun. 28, 2016) (alleged procedural injury must be tethered to adversely affected concrete interest); *see also Williams v. Lew*, 819 F.3d 466, 475 (D.C. Cir. 2016) (no standing for due process claim based on hypothetical future injury).  As the Supreme Court recently reaffirmed, a plaintiff lacks standing for an alleged procedural violation without a concrete and particularized harm that "actually exist[s]," *i.e.*, one that is "actual or imminent."  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016).

Riverkeeper provides no reason why its alleged due process allegation is somehow different.  Even the Ninth Circuit concurrence that Riverkeeper cites as the "seminal analysis" of standing requires an injury-in-fact to a legally protected right.  Opp. at 20-21 (citing *Sierra Forest Legacy v. Rey*, 577 F.3d 1015, 1026 (9th Cir. 2009) (Noonan, J., concurring)).  Riverkeeper's other authorities do not even address standing.  *See* Opp. at 11 (citing *Hammond v. Baldwin*, 866 F.2d 172 (6th Cir. 1989) (affirming dismissal of due process claim of bias for failure to state a claim); *United Church of Med. Ctr. v. Med. Ctr. Comm'n*, 689 F.2d 693, 701 (7th

Cir. 1982) (addressing preliminary injunction)); *see also* PennEast Mot. at 11 (right to intervene administratively does not provide standing for due process claim).

Nor does Riverkeeper's opposition fix its inability to demonstrate concrete harm.  *See* FERC Mot. at 20-27; *see also Summers*, 555 U.S. at 496 (dismissing complaint because plaintiff failed to allege how any particular agency decision lacking due process protection impeded a specific and concrete right); *Metcalf v. Nat'l Petroleum Council*, 553 F.2d 176, 186 (D.C. Cir. 1977) (dismissing bias claim as "speculative and conjectural in the purest sense").  Riverkeeper's affidavits do not provide additional support to the complaint's speculative concerns.  *See Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015) (standing requires plausible allegations in the complaint to survive a motion to dismiss).

Riverkeeper's declarants focus almost entirely on the effects of the proposed PennEast pipeline.  But the PennEast pipeline has not been approved.  *See* Hendel Decl. ¶ 2 (PennEast pipeline "proposed" to cross property); Kelly-Mackey Decl. ¶ 2 (PennEast "proposed to bisect" property); Rader Decl. ¶ 6 (PennEast "proposed to abut" property).  It may never be.  *Cf.  Sierra Club*, No. 14-1275, slip op. at 9-10 (alleged concrete harms in case "tethered" to procedural injury because project allegedly causing harms had been approved).

As detailed in the Commission's Motion to Dismiss, Mot. at 9-10, the Commission conducts a three-tier review process for natural gas pipeline

applications.  *See Minisink Residents for Envtl. Pres & Safety v. FERC*, 762 F.3d

97, 101 (D.C. Cir. 2014) (detailing FERC review process); *see also* Amicus Br. at

8-11 (same).[1]  The Commission only approves a pipeline after it completes a

National Environmental Policy Act mandated environmental review and

determines that a pipeline's benefits outweigh the project's adverse impacts.

*Minisink*, 762 F.3d at 102 (citing 42 U.S.C. §§ 4321-4370h).  And as discussed in

PennEast's Motion, the Commission has denied several natural gas pipeline

applications – including where the project's need "'did not outweigh the potential

for adverse impact on landowners and communities.'"  PennEast Mot. at 29-30

(quoting *Jordan Cove Energy Project, L.P.*, 154 FERC ¶ 61,190, PP 38-41 (2016)).

Here, the Commission will not even conduct an environmental review of the

PennEast proposal until March 16, 2017 – with any approval only coming after.

*See* FERC Mot. at 10.  It is the height of speculation to assume the Commission

will approve the pipeline.  Even if the PennEast pipeline is ultimately approved,

the Commission may impose conditions to protect the environment, alter the route,

or otherwise change the proposal to minimize the project's impact.  *See* FERC

Mot. at 9-10; *see also* U.S. Stmt. at 2-3 (citing 15 U.S.C. § 717f(e) for Commission

authority to attach conditions and 18 C.F.R. §§ 157.1-157.22 for Commission

---

[1] Citing *Certification of New Interstate Nat'l Gas Pipeline Facilities*, 88
FERC ¶ 61,277 (1999), *clarified*, 90 FERC ¶ 61,128 (1999), *further clarified*, 92
FERC ¶ 61,094 (2000).

certification process); Amicus Br. at 8-11 (Commission review generally results in environmental conditions and mandates that a pipeline minimize impacts on affected landowners and communities); PennEast Mot. at 28 n.3 (referencing certificate order attaching 43 environmental conditions to project).

So contrary to Riverkeeper's claim, a hypothetical PennEast pipeline may not cross the declarants' property. *See* Opp. at 3 (asserting that the PennEast pipeline already "directly crosses" its members' property). It may not otherwise affect the declarants' environmental or recreational interests. Such speculative concerns about possible future harms do not represent a concrete injury at this time – *i.e.*, an injury that actually exists. *Compare* van Rossum Decl. ¶ 12 (declarant expects that her trips to the PennEast project area will continue in the "near and far future") *with Summers*, 555 U.S. at 496 (affidavit stating declarant planned to visit National Forests in future insufficient to support standing because it failed to allege how any specific agency action will impede a "specific and concrete" plan of declarant to enjoy the National Forests).

### B.   The Alleged Past Harms Suffered By Riverkeeper's Members Do Not Support Standing

The remaining Riverkeeper declarants cite past pipeline – not Commission – activity in support of Riverkeeper's assertion that it has standing to challenge the Budget Act. *See* Nelson Decl. ¶¶ 9-24 (addressing pipeline activities for pipeline that the Commission approved December 18, 2014); Farrell Decl. ¶ 7 (addressing

8

pipeline construction that began in 1992); *see also* PennEast Mot. at 15 (complained-of prior actions by pipelines cannot support standing because the alleged harms are not caused by the Commission).  But alleged past injuries – standing alone – cannot support injunctive relief.  *See Arpaio*, 797 F.3d at 19 (party must establish an ongoing or future injury that is "'certainly impending'" for declaratory and injunctive relief) (quoting *Clapper v. Amnesty Int'l*, 133 S. Ct. 1138, 1147 (2013)).  Even Riverkeeper's allegedly supporting authorities reach the same result.  *See, e.g.*, *City of L.A. v. Lyons*, 461 U.S. 95, 102 (1983) (no standing because a past injury does not support injunctive relief).

Riverkeeper provides no support for why past Commission certification orders constitute ongoing harms.  Opp. at 13.   Nor could Riverkeeper explain how ongoing Commission jurisdiction somehow makes the Commission responsible for alleged past pipeline harms, which in turn permits past pipeline activity to support injunctive relief.  *See Cal. for Renewable Energy v. DOE*, 860 F. Supp. 2d 44, 52 (D.D.C. 2012) (procedural violation must be linked to alleged harms).

### C.    Riverkeeper's Alleged Harms Would Not Be Remedied By Declaring the Budget Act Unconstitutional

Nor are Riverkeeper's alleged harms "'likely'" redressed by declaring the Budget Act unconstitutional.  *Arpaio*, 797 F.3d at 19 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).  The Natural Gas Act mandates that the Commission approve natural gas pipelines that are in the public convenience and

9

necessity.  *Minisink*, 762 F.3d at 101 (quoting 15 U.S.C. §717f(e)); *see* Amicus Br.

at 5-7 (detailing how the Commission balances the nation's need for natural gas

against environmental and other harms).  As discussed, *supra* at pp. 6-8, the

Commission has extensive regulations to fulfill that mandate.  The Commission

determines when to certify a natural gas pipeline application and attaches

reasonable terms and conditions to a certificate.  *See* PennEast Mot. at 30 (citing

instances where FERC vacated certificates where the applicant could not satisfy

the Commission's environmental mitigation conditions) (citing *Chestnut Ridge*

*Storage LLC*, 139 FERC ¶ 61,149, P 8 n.9 (2012)).

Riverkeeper provides no evidence that its sought-after relief of declaring the

Budget Act unconstitutional will alter the Natural Gas Act or how the Commission

exercises its authority under that Act.  *See Metcalf*, 553 F.2d at 185 (dismissing

"unspecified and indeterminate" claim that alleged bias would cause agency to

adopt industry-friendly policies, which would in turn harm consumers).

Riverkeeper instead suggests that it not only wants the Court to declare a

longstanding statute unconstitutional.  Opp. at 14.  It wants this Court to (re)-

review individual pipeline decisions and either "requir[e] the pipeline to be

removed" or to "require the Commission to reconsider the certificate approval."

*Id.*  Such a request for the Court to act as a "super-Commission" not only goes

beyond the relief Riverkeeper seeks in its complaint, it collaterally attacks prior

and non-final Commission orders.  *See Ga. Indus. Grp. v. FERC*, 137 F.3d 1358,

1363 (D.C. Cir. 1998) (challenge brought after the Natural Gas Act's 60-day limit

for judicial review is impermissible collateral attack on FERC orders) (citing

15 U.S.C. § 717r(b)).

And Riverkeeper's request for such extraordinary relief would not

necessarily alter how the Commission abides by its statutory mandate to consider

natural gas pipeline applications.  *See* Compl. Section VI (Request for Relief) (no

relief requested regarding Natural Gas Act).  Riverkeeper's only basis to think

otherwise is a misguided claim that the Commission would not approve natural gas

pipelines but-for its supposed structural bias.  This not only impugns the honesty

and integrity of the Commission in carrying out its statutory duties.  *See Caperton*

*v. A.T. Massey Coal Co.*, 556 U.S. 868, 891 (2009).  It is entirely speculative and

contradicted by law.  *See Arpaio*, 797 F.3d at 19 (redressability must be likely, not

speculative); *see generally* PennEast Mot. at 27-34 (Commission has rejected

applications, attaches extensive conditions to certificates that it does approve, and

has revoked certificates when the pipeline does not comply with conditions).

## II.     Riverkeeper Fails To State A Claim For Which Relief Can Be Granted

Riverkeeper's claim can be dismissed for any of a multitude of

jurisprudential reasons.  But most simply, Riverkeeper has not stated a claim of

structural or institutional bias because it cannot change two undisputable facts

about the Commission's statutorily defined funding structure.  First, the Commission does not obtain additional money by approving natural gas pipelines. Second, Congress – not the Commission – sets the Commission's funding.  *See* 42 U.S.C. § 7171(j); 42 U.S.C. § 7178; *see also* FERC Mot. at 35; U.S. Stmt. at 7; PennEast Mot. at 19; Amicus Br. at 13.  Riverkeeper's sole complaint of structural bias can and should be dismissed solely on the statutory text.

This statutory scheme – even without considering the presumption of honesty and integrity afforded federal officials – distinguishes the Budget Act's funding mechanism from cases finding institutional bias.  To find structural bias here would not only significantly extend Supreme Court precedent.  It would call into question the Commission's entire budgetary scheme – and the funding of all other federal departments and agencies similarly funded, at least in part, through user fees and other assessments and user charges.  *See* FERC Mot. at 38 (Commission recovers annual charges from different energy sectors to reimburse the Treasury); U.S. Stmt. at 14-15 (finding that FERC structurally biased due to its funding scheme would undermine 25 similarly funded departments and agencies).

## A. Approving A Natural Gas Pipeline Does Not Increase The Commission's Budget As A Matter Of Law

### 1. Commission Spending Is Set By Congress

As discussed in the Motion to Dismiss, a bias claim can allege a direct pecuniary or other personal interest (not applicable here).  *See* FERC Mot. at 31.

12

Or a Plaintiff can demonstrate that a judgment so substantially increases an institution's available funds that it provides a strong motive to rule in a way that aids the institution – *i.e.*, a claim of structural or institutional bias. *Id.*; *see* U.S. Stmt. at 6 (discussing distinction); PennEast Mot. at 17-18 (same).

But here, the Commission's budget is set by Congress. *See* 42 U.S.C. § 7171(j) (requiring the Commission to submit an annual authorization and appropriation request); *see generally* FERC Mot. at 34; *see also* U.S. Stmt. at 7; Amicus Br. at 13. The Commission must submit an annual budget request to the Office of Management and Budget for inclusion in the President's budget submitted to Congress. *See* U.S. Stmt. at 13 (citing 42 U.S.C. § 7171(j)). The Commission cannot spend beyond what Congress appropriates. 42 U.S.C. § 7171(j); *see* U.S. Stmt. at 7; Amicus Br. at 13.

Contrary to Riverkeeper's allegation (Opp. at 30), the Commission does not receive additional funds when it approves a new pipeline. *See* 42 U.S.C. § 7178(a)(1); *accord* PennEast Mot. at 19; Amicus at 7. Instead, the Commission assesses fees on pipelines by dividing its fixed costs amongst all existing pipelines. Those fees reimburse the Treasury for the Commission's appropriation. *See* 42 U.S.C. § 7178(a)(1). Approving a new pipeline only further divides those costs the next year, resulting in a lower per-unit charge for each pipeline. *Id.*; *see* U.S. Stmt.

at 7; Amicus at 13; PennEast Mot. at 19.  Likewise, denying an application does not alter the Commission's budget.

Riverkeeper contends the statute allows the Commission to collect fees associated with its "costs" during a fiscal year.  Opp. at 30.  So "Defendants are therefore theoretically free to collect monies beyond what was appropriated by Congress, and simply request access to those funds in the following year's budget request."  Opp. at 30.  This is untrue.  Pipeline fees are deposited with the Treasury's general fund.  *See* 42 U.S.C. § 7178(f) (all money received under this section shall be credited to the general fund of the Treasury); *see also* Amicus at 13.  The Commission does not have access to the general fund.  *See* 42 U.S.C. § 7178(f); *see also* Amicus Br. at 13.  Further, any amounts over-collected through fees and charges are trued-up in determining annual fees for the following year. *See* 42 U.S.C. § 7178(e) (requiring the Commission to eliminate any over-recovery or under-recovery of total costs); *see also* U.S. Stmt. at 8; PennEast Mot. at 20; Amicus Br. at 13.  The Anti-Deficiency Act prohibits federal agencies from spending beyond the appropriated amount.  *See* 31 U.S.C. § 1341(a)(1)(A).  In no event is the Commission able to increase or spend above the amount set by Congress due to an over-collection of annual fees.  *See* 42 U.S.C. §7171(j); *see also* FERC Order No. 472, FERC Stats. & Regs. at ¶ 32,434; U.S. Stmt. at 7 (Commission's budget set by Congress).

14

As Riverkeeper only alleges a facial challenge to the Budget Act's funding arrangement, Riverkeeper's complaint can be dismissed on this statutory scheme alone. Riverkeeper responds that whether the Budget Act allows the Commission to increase its annual revenues by approving a natural gas pipeline "relies on contested issues of fact." Opp. at 28. But this is not a factual dispute. It is a matter of federal law. 42 U.S.C. § 7171(j); 42 U.S.C. §7178(f). Riverkeeper cannot create a factual dispute by imagining facts that are contradicted by statute. *See Kaempe v. Myers*, 367 F.3d 958, 963 (D.C. Cir. 2004) (on motion to dismiss court will not accept factual allegations that are contradicted by law).

### 2. Riverkeeper's Challenges To Congressional Oversight Of The Commission's Budget Are Speculative At Best

In response to this uncontroverted statutory scheme, Riverkeeper only contends that Congressional control over the Commission's budget is a facade. Riverkeeper alleges that the Commission's budget is "unbound" (Opp. at 28) and "unchecked" (Opp. at 29) by Congress, and that it is only "theoretically possible" (Opp. at 32) for Congress to set limits. But as discussed above, *supra* at pp. 13-14, by law Congress can and does set expense limits on the Commission's budget. *See* 42 U.S.C. § 7171(j) (FERC makes annual appropriations requests, through the Office of Management and Budget, to Congress). It is simply no answer to impugn Congress's intent or ability to exercise its authority (Opp. at 30), and this Court should not be lured into an exploration of Congressional motives.

In fact, Congress has exercised its control, at least twice setting a lower budget than the Commission requested. *See, e.g.*, Consolidated Appropriations Resolution, 2015 Publ. L. No. 113-234, Div. D., Title III, 128 Stat. 2321 (2014) (setting lower budget than requested). *Compare*, *e.g.*, H.R. 3183, Pub. L. 111-85, p. 27 (setting FERC 2011 budget at $298,000,000) *with* http://www.ferc.gov/about/strat-docs/FY11-budg.pdf (2011 budget request seeking $315,600,000 in total budget); *see also* FERC Mot. at 35; U.S. Stmt. at 13; PennEast Mot. at 20; Amicus Br. at 13.  While Riverkeeper claims these instances are too infrequent or the amounts by which the Commission's budget requests were reduced too small (Opp. at 30) to be meaningful, they indisputably demonstrate Congress's power over the Commission's budget.

Nor is the fact that Commission funding levels have increased evidence that FERC has unfettered budgetary discretion.  Again, to suggest that "Congress has no effective incentive or means for capping the Commission's costs" (Opp. at 29) is not only improperly inviting this Court to question Congressional motives – it is false.  Riverkeeper ignores the energy industry's changes and the new responsibilities, in various regulatory programs, granted to the Commission in the Energy Policy Act of 2005, Pub. L. No. 109-58, 119 Stat. 594.  These changes drive much of the budget increase.  *See FERC v. Elec. Power Supply Ass'n*, 136 S. Ct. 760, 768 (2016) (describing modern development of regional electricity

markets); *see also S.C. Pub. Util. Auth. v. FERC*, 762 F.3d 41, 49-52 (D.C. Cir.

2014) (same).  Although the natural gas program accounts for almost 20 percent of

the Commission's budget, that percentage has decreased since 2003.[2]

| YEAR | Actual Natural Gas Program Budget ($ in thousands) | Total FERC Budget ($ in thousands) | Natural Gas as a % of Total FERC Budget |
|---|---|---|---|
| 2001 | 67,800 | 178,521 | 37.98% |
| 2002 | 67,618 | 190,854 | 35.43% |
| 2003 | 59,284 | 190,231 | 31.16% |
| 2004 | 59,119 | 201,946 | 29.27% |
| 2005 | 51,851 | 206,973 | 25.05% |
| 2006 | 55,735 | 223,586 | 24.93% |
| 2007 | 62,615 | 224,921 | 27.84% |
| 2008 | 65,478 | 247,689 | 26.22% |
| 2009 | 76,875 | 282,469 | 27.22% |
| 2010 | 67,267 | 296,297 | 22.70% |
| 2011 | 64,861 | 292,350 | 22.19% |
| 2012 | 62,571 | 304,893 | 20.52% |
| 2013 | 57,386 | 289,620 | 19.81% |
| 2014 | 57,455 | 300,258 | 19.14% |
| 2015 | 61,496 | 315,367 | 19.50% |

So although the Commission's overall budget has increased, the natural gas

program's share of that budget has decreased.  This undermines Riverkeeper's

suggestion that the Commission seeks to grow its natural gas program "in both size

and influence."  Opp. at 35.

---

[2] Information included in this table is found in the individual Congressional
Budget Requests available at http://www.ferc.gov/about/strat-docs/requests-
reports.asp.  Starting in 2010, the Commission separated natural gas and oil
program costs, so 2010 through 2015 numbers reflect only natural gas program
costs, while numbers prior to 2010 include both the natural gas and oil program
costs combined.

**B.    Speculative Concerns That the Commission Must Approve Pipelines To Secure Long-Term Funding Are Too Remote**

In an attempt to controvert the fact that any single pipeline approval does not increase the amount available to the Commission, Riverkeeper argues that, as pipelines retire from service, the Commission needs new pipelines to support its ever-increasing budget.  Opp. at 34.  This fantastical scenario assumes that no pipeline would ever be approved on its merits as in the public interest. Riverkeeper argues, without evidentiary support, that – rather than fulfilling the public need for natural gas transportation – the Commission only approves pipeline applications based upon its long-term budget desires.  *But see* Amicus Br. at 6-7 (explaining how natural gas is replacing coal as fuel for electricity generation).

Because of the breadth and scope of the natural gas industry, it is inconceivable that the Commission looks to any one pipeline application as a means of securing funding.  *See id.* at 6 (there are more than 210 distinct pipeline systems in the lower 48 states).  More importantly, such general speculation is too remote.  It assumes that individual Commissioners (much less all Commissioners colluding to vote on the pipeline certificate orders) are motivated by the agency's long-term financial security.  *See Doolin Sec. Sav. Bank, FSB v. FDIC*, 53 F.3d 1395, 1407 (4th Cir. 1995) (generalized allegations of bias are too remote to demonstrate a disqualifying institutional temptation).

Baseless speculation such as this has been rejected in prior due process structural bias cases. *Compare United States v. Benitez-Villafuerte*, 186 F.3d 651, 660 (5th Cir. 1999) (fact INS's funding depends on statistical workload in deporting illegal aliens too tenuous for a bias claim); *Doolin*, 53 F.3d at 1407 (FDIC did not have disqualifying institutional interest in assessing premiums on member institutions despite mandate to consider needs of deposit insurance fund); *Hammond*, 866 F.2d at 177 (general allegations of institutional bias did not disqualify state government from decision-making) *with United Church*, 689 F.2d at 699 (reverter proceedings unconstitutional where a finding of nonuse or disuse of property results in the property reverting to the agency without cost and where agency keeps proceeds of subsequent sales of the reverted property). *See generally* U.S. Stmt. at 10-11; PennEast Mot. at 18-24.

As the Supreme Court recently found, "due process 'demarks only the outer boundaries of judicial disqualifications.'" *Williams v. Pa.*, No. 15-5040, slip op. at *10 (June 9, 2016). To find a disqualifying institutional interest here would move the "outer boundary of judicial qualifications" so far inward as to include the funding schemes for over 25 federal departments and agencies – in contrast to precedent finding no structural bias for comparable agency funding. *See Doolin*, 53 F.3d at 1407 ("finding the FDIC biased in this case would seriously undermine

the ability of agencies in general to adjudicate disputes that affect their official policies"); *see also* FERC Mot. at 35-36; U.S. Stmt. at 14 ; PennEast Mot. at 21.

The Ninth Circuit concurrence heavily relied upon by Riverkeeper demonstrates why the Commission's funding mechanism is unremarkable. *See Earth Island Inst. v. U.S. Forest Serv.*, 351 F.3d 1291, 1309-10 (9th Cir. 2003) (Noonan, J., concurring). In expressing concern that each timber sale increased the monies available to the U.S. Forest Service "independent of the normal appropriation process," Judge Noonan recognized that "the impartiality of the agency would not be an issue if all the money from the [timber] sales went to the Treasury." *Id.* at 1310.

But here, the natural gas pipeline user-fees are paid directly to the Treasury. 42 U.S.C. §7178(f). Congress sets the Commission's available funding. 42 U.S.C. § 7171(j). So according to the concurring decision cited by Riverkeeper (Opp. at 36, 39), the Commission's funding structure does not raise concerns of institutional bias. This analysis is consistent with Supreme Court precedent. *See* FERC Mot. at 33; *see also* U.S. Stmt. at 6-9; PennEast Mot. at 17-26.

Nor do Riverkeeper's attenuated claims overcome the presumption of the Commission's honesty and integrity. *See Caperton*, 556 U.S. at 891; PennEast Mot. at 27. As set forth in the Complaint, each FERC Commissioner serves for a term up to five years and is confirmed by the Senate, with no more than three

Commissioners being from one political party.  Compl. ¶¶ 60-61; *see also*  42

U.S.C. § 7171(c).   Structural bias is judged by whether the Commission's funding

structure would "offer the "possible temptation to the average man as a judge . . .

to forget the burden of proof . . . or lead him not to hold the balance nice, clear and

true." *Tumey v. Ohio*, 273 U.S. 510 (1927); *see Caperton*, 556 U.S. at 891 (court

must judge "whether, under a realistic appraisal of psychological tendencies and

human weakness, the interest poses such a risk of actual bias or prejudgment that

the practice must be forbidden if the guarantee of due process is to be adequately

implemented.").   It is unrealistic to assume that Senate-confirmed individuals, who

enjoy (and have earned) a presumption of honesty and integrity, collude in voting

to sustain funding for an agency that they serve for a time-limited period.  *See*

*Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (Rule 12(b)(6) motion "requires the

reviewing court to draw on its judicial experience and common sense").

### C.    Riverkeeper Cannot Show An Intolerably High Risk Of Bias

Because Riverkeeper cannot demonstrate that the Commission increases its

funding by approving pipelines (*see supra* pp. 13-14), Riverkeeper is left alleging

that the Commission appears biased to Riverkeeper.  *See* Opp. at 39-42 (discussing

FERC approval rate of pipeline projects, record of enforcement actions against

pipelines, "never requesting funding" for the Office of Public Participation, and

use of tolling orders).  But a court asks "not whether a judge harbors an actual,

subjective bias, but instead whether, as an objective matter, 'the average judge in

his position is likely to be neutral, or whether there is an unconstitutional potential

for bias.'"  *Williams*, slip op. at *6 (quoting *Caperton*, 556 U.S. at 881).

And as Riverkeeper's supporting case law holds (Opp. at 23), although

Riverkeeper need not prove actual partiality, it must demonstrate that the risk of

bias is "intolerably high," *Utica Packing Co. v. Block*, 781 F.2d 71, 77 (6th Cir.

1986), based on the defendant's financial interest.  *United Church*, 689 F.2d at

701.  As detailed above, Riverkeeper cannot meet this objective standard "'to state

a claim [] that is plausible on its face.'"  *Arpaio*, 797 F.3d at 19 (quoting *Iqbal*, 556

U.S. 678); *see also Doolin*, 53 F.3d at 1407 (structural bias claim requires that  the

ability and institutional motive to rule in a manner that favors the organization is so

strong as to outweigh "the strong public interest in effective, efficient, and expert

decision making in the administrative setting").

Because Riverkeeper cannot show the Commission has a financial stake in

approving pipelines, it is left with a hodge-podge of allegations that it contends

provide an appearance of bias.  But there is no legal authority to support that

"allegations of 'actual bias' . . . constitute evidence of the Commission's inherent

bias."  Opp. at 8.  Such allegations cannot substitute for demonstrating the

elements of a structural bias claim.  *See Arpaio*, 797 F.3d at 19 ("'threadbare

recitals of the elements of [a claim], supported by mere conclusory statements, do

not suffice.'") (quoting *Iqbal*, 556 U.S. at 678).

And in any event, Riverkeeper's allegations are untrue and unfounded.  The

Commission's pipeline approval rate is not probative of bias.  *See No Gas Pipeline*,

756 F.3d at 770 (approval rate "adds nothing to the strength of an otherwise

unsupported claim"); *see also* PennEast Mot. at 27-28; Amicus Br. at 9-12.  The

Commission fully enforces its statutory mandate under the Natural Gas Act.  *See*

PennEast Mot. at 31-34.  The Commission has requested funding for the Office of

Public Participation.  *See* PennEast Mot. at 41-42; *see also* H.R. 12928, the Energy

and Water Development Appropriation Bill, 1979 (noting that: "the appropriation

included in the bill does not provide for funding intervenor actions"

notwithstanding the Commission's 1979 budget request to fund the office).  So

Riverkeeper's allegations of the "appearance of bias" are not only inaccurate, but

beside the point.  *See Ward v. Village of Monroeville*, 409 U.S. 57, 60-61 (1972)

(structural bias requires institutional pecuniary interest).

### D.     Riverkeeper Cannot State A Due Process Claim Related To Tolling Orders

Because it waives any actual bias claim and, perhaps out of concern for the

failings in its structural bias allegations, Riverkeeper uses its Opposition to convert

its Complaint into a due process challenge to the Commission's use of tolling

orders that provide the Commission more than 30 days to act on petitions for

rehearing.  Opp. at 42.  Yet Riverkeeper's Complaint does not request a finding that tolling orders are unconstitutional.  *See* Compl. Section VI (Request for Relief); *see also id.* ¶ 191 (describing Commission use of tolling orders as "[a]n example of the Commission's bias toward industry").  And Riverkeeper can only seek review of Commission tolling orders in circuit court through 15 U.S.C. §717r(b)'s exclusive review procedure – as the length and terms of such orders are necessarily specific to each pipeline certification process.  *See Town of Dedham v. FERC*, 2015 WL 4274884, at *2 (D. Mass. July 15, 2015) ("any alleged infirmity" with a FERC ruling or "its authority to so rule" can only be challenged in court of appeals) (quotation omitted).

Worse, Riverkeeper ignores that the Commission's use of tolling orders has been affirmed by all courts addressing the issue.  *See Kokajko v. FERC*, 837 F.2d 524, 525 (1st Cir. 1988) (statutory requirement to "act" within 30 days does not mean FERC must act on the merits); *Cal. Co. v. Fed. Power Comm'n*, 411 F.2d 720, 722 (D.C. Cir. 1969) (holding that 15 U.S.C. § 717r(a) only requires the Commission to act upon the petition – not to act on the merits); *Gen. Am. Oil Co. of Tx. v. Fed. Power Comm'n*, 409 F.2d 597, 599 (5th Cir. 1969) (same); *see also* PennEast Mot. at 35-36 (listing cases).  Far from presenting "a factual and legal question of first impression" (Opp. at 44), the First Circuit rejected that Commission tolling orders violate due process.  *See Kokajko*, 837 F.2d at 525-26

24

(rejecting argument that the tolling order and length of time the matter had been pending constitute a denial of due process).

Additionally, Riverkeeper is aware of, and sought, immediate appellate review of an initial Commission order where the Commission has tolled the 30-day deadline to consider rehearing requests. *See, e.g.*, *Del. Riverkeeper Network v. FERC*, No. 13-1015 (D.C. Cir. Feb. 6, 2013) (denying a stay to halt construction of a 40-mile pipeline).  In fact, Riverkeeper fails to mention that in the Leidy Southeast pipeline case (discussed Opp. at 43), Riverkeeper sought a stay from the D.C. Circuit – a stay that was denied.  *See In re: Delaware Riverkeeper Network*, No. 15-1052 (D.C. Cir. Mar. 19, 2015).  Riverkeeper is now challenging the Commission's Leidy pipeline decision under 15 U.S.C. §717r(b).  *See Del. Riverkeeper Network v. FERC*, D.C. Cir. No. 16-1092 (briefing underway).  If Riverkeeper is aggrieved after the Commission takes final action in the PennEast pipeline proceeding, it can pursue appellate review in the same manner.

## CONCLUSION

For the reasons stated, this Court should dismiss the Plaintiffs' complaint for failure to establish jurisdiction or failure to state a claim.  Alternatively, this Court should exercise its discretion to decline declaratory relief.

Respectfully submitted,

ROBERT H. SOLOMON, D.C. Bar No. 395955
Solicitor

LISA B. LUFTIG, D.C. Bar No. 496738
Attorney

ROSS R. FULTON, D.C. Bar No. 982304
Attorney

Dated:  July 7, 2016      By:      */s/ Ross R. Fulton*
ROSS R. FULTON, D.C. Bar No. 982304
Federal Energy Regulatory Commission
888 First Street, NE
Washington, DC 20426
ross.fulton@ferc.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be sent to those indicated as non-registered participants.

Dated: July 7, 2016                    /s/ *Ross R. Fulton*
                                       ROSS R. FULTON
                                       Attorney