**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

DELAWARE RIVERKEEPER )
NETWORK, *et al.*, )
     Plaintiffs, )
   )
         v. )    Civil Action No. 1:16-cv-00416-TSC
   )
FEDERAL ENERGY REGULATORY )
COMMISSION, *et al.*, )
   )
     Defendants. )
   )

## REPLY IN SUPPORT OF MOTION TO DISMISS
## BY DEFENDANT-INTERVENOR PENNEAST PIPELINE COMPANY

Michael B. Wigmore (D.C. Bar No. 436114)
Jeremy C. Marwell (D.C. Bar No. 1000299)
VINSON & ELKINS LLP
2200 Pennsylvania Avenue, NW
Suite 500 West
Washington, DC 20037
Phone: 202.639.6500
Email: mwigmore@velaw.com

*Attorneys for PennEast Pipeline Company, LLC*

*Of Counsel:*

Frank H. Markle
PENNEAST PIPELINE COMPANY, LLC
460 North Gulph Road
King of Prussia, PA 19406
Phone: 610.768.3625
Email: marklef@ugicorp.com

James D. Seegers
Sabina Dugal Walia
VINSON & ELKINS LLP
1001 Fannin St.
Suite 2500
Houston, TX 77002
Phone: 713.758.2939
Email: jseegers@velaw.com

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................................................ii

I.      INTRODUCTION ...........................................................................................................1

II.     PLAINTIFFS CONCEDE SEVERAL JURISDICTIONAL DEFECTS. ..........................2

III.    PLAINTIFFS FAIL TO STATE A CLAIM OF STRUCTURAL BIAS. ..........................3

    A.  The Commission's Statutory Funding Structure Creates No Incentive To
        Approve Pipeline Projects. ........................................................................................4

    B.  Even Assuming The Budget Act Creates Some Financial Incentive, It Is Too
        Remote And Insubstantial To Establish Structural Bias. ............................................7

    C.  DRN's Counterarguments Are Unavailing...................................................................8

IV.     PLAINTIFFS' ACTUAL-BIAS ALLEGATIONS CANNOT STATE A CLAIM FOR
        RELIEF IN THIS COURT. .............................................................................................10

V.      DRN HAS NOT ALLEGED A COGNIZABLE LIBERTY OR PROPERTY
        INTEREST OR ANY "DEPRIVATION" UNDER THE DUE PROCESS CLAUSE. .....11

    A.  DRN Must Identify A Cognizable Liberty Or Property Interest, And Mere
        Participation In An Administrative Hearing Is Not Enough. ......................................13

    B.  DRN's Environmental Interests Are Not Protected "Property." .................................15

        1.  Section 27 Does Not Create An Individual Right. ...........................................16

        2.  Section 27 Does Not Create Sufficiently Definite Interests To Be
            Cognizable Under The Due Process Clause. ....................................................20

    C.  DRN's Alleged Environmental, Aesthetic, And Recreational Interests Are Not
        "Liberty Interests" Under The Due Process Clause. ..................................................21

    D.  Even If DRN Identified Cognizable Property Or Liberty Interests, It Has Not
        Alleged Any "Deprivation" Under The Due Process Clause. .....................................22

VI.     PLAINTIFFS' TOLLING-ORDER ALLEGATIONS FAIL TO STATE A CLAIM
        AND DO NOT SHOW STRUCTURAL BIAS. ...............................................................23

    A.  The Tolling-Order Allegations Fail To State A Viable Freestanding Claim. ..............23

    B.  The Tolling-Order Allegations Do Not Support A Structural-Bias Claim.................25

VII.    CONCLUSION ..............................................................................................................25

CERTIFICATE OF SERVICE ...................................................................................................27

# TABLE OF AUTHORITIES

## Court Cases                                                              Page(s)

*Aetna Life Ins. Co. v. Lavoie,*
    475 U.S. 813 (1986) ........................................................................................4, 7

*Air Line Pilots Ass'n, Int'l v. Civil Aeros. Bd.,*
    750 F.2d 81 (D.C. Cir. 1984)..............................................................................3

*Am. Mfrs. Mut. Ins. Co. v. Sullivan,*
    526 U.S. 40 (1999) ...........................................................................................13

*Atherton v. D.C. Office of Mayor,*
    567 F.3d 672 (D.C. Cir. 2009)....................................................................21, 22

*B&J Oil and Gas v. FERC,*
    353 F.3d 71 (D.C. Cir. 2004)......................................................................12, 23

*Bell v. Burson,*
    402 U.S. 535 (1971) .........................................................................................20

*Bi-Metallic Inv. Co. v. State Bd. of Equalization,*
    239 U.S. 441 (1915) .........................................................................................19

*Bond v. United States,*
    564 U.S. 211 (2011) .........................................................................................12

*Brandon v. D.C. Bd. of Parole,*
    823 F.2d 644 (D.C. Cir. 1987)....................................................................15, 23

*Cal. Co. v. Fed. Power Comm'n,*
    411 F.2d 720 (D.C. Cir. 1969).........................................................................25

*Cal. Mun. Utils. Ass'n v. FERC,*
    No. 01-1156, 2001 WL 936359 (D.C. Cir. July 31, 2001).......................................25

*City of Phila. v. Pa. Ins. Dep't,*
    889 A.2d 664 (Pa. Commw. Ct. 2005) ............................................................14

*Cmty. Coll. of Del. Cty. v. Fox,*
    342 A.2d 468 (Pa. Commw. Ct. 1975) ............................................................18

*Commonwealth v. Barnes & Tucker Co.,*
    319 A.2d 871 (Pa. 1974)............................................................................17, 18

*Commonwealth v. Gavlock,*
    964 A.2d 455 (Pa. Commw. Ct. 2008) ............................................................18

*Commonwealth v. Thompson,*
    985 A.2d 928 (Pa. 2009) ..................................................................................18

*Cty. of Sacramento v. Lewis,*
    523 U.S. 833 (1998) .........................................................................................16

**Court Cases—Continued**                                                    Page(s)

*DeBlasio v. Zoning Bd.*,
  53 F.3d 592 (3d Cir. 1995) ................................................................22

*Del. Riverkeeper Network v. FERC*,
  No. 16-1092 (D.C. Cir.) ....................................................................24

*Del. Riverkeeper Network v. Quigley*,
  No. 15-2122 (3d Cir.) .......................................................................24

*Doolin Sec. Sav. Bank, F.S.B. v. FDIC*,
  53 F.3d 1395 (4th Cir. 1995) .....................................................3, 10, 25

*Doyle v. City of Medford*,
  606 F.3d 667 (9th Cir. 2010) .......................................................20, 21

*EJS Props., LLC v. City of Toledo*,
  698 F.3d 845 (6th Cir. 2012) ............................................................14

*Ellis v. D.C.*,
  84 F.3d 1413 (D.C. Cir. 1996) .........................................................21

*Feudale v. Aqua Pennsylvania, Inc.*,
  122 A.3d 462 (Pa. Commw. Ct. 2015) ............................................18

*Gen. Elec. Co. v. Jackson*,
  610 F.3d 110 (D.C. Cir. 2010) .............................................13, 14, 16, 22

*Gibson v. Berryhill*,
  411 U.S. 564 (1973) ......................................................................4, 9

*Gunpowder Riverkeeper v. FERC*,
  807 F.3d 267 (D.C. Cir. 2015) .........................................................23

*Hammond v. Baldwin*,
  866 F.2d 172 (6th Cir. 1989) .......................................................13, 14

*Hodges v. Snyder*,
  261 U.S. 600 (1923) ........................................................................16

*In re Stop the Pipeline*,
  No. 15-926 (2d Cir. Mar. 27, 2015) .................................................25

*In re: Delaware Riverkeeper Network*,
  No. 15-1052 (D.C. Cir. Mar. 19, 2015) ...........................................24

*Kokajko v. FERC*,
  837 F.2d 524 (1st Cir. 1988) ...........................................................25

*Loving v. Virginia*,
  388 U.S. 1 (1967) ............................................................................21

*Mathews v. Eldridge*,
  424 U.S. 319 (1976) ...................................................................14, 16

**Court Cases—Continued**                                                      Page(s)

*McBryde v. Comm. to Review Circuit Council Conduct & Disability Orders of Judicial Conference of U.S.*,
  264 F.3d 52 (D.C. Cir. 2001)................................................................12

*Meyer v. Niles Township*,
  477 F. Supp. 357 (N.D. Ill. 1979)........................................................9

*Mullaney v. Wilbur*,
  421 U.S. 684 (1975) ..........................................................................17

*Muscarella v. Commonwealth*,
  87 A.3d 966 (Pa. Commw. Ct. 2014) ..................................................14

*NB ex rel. Peacock v. D.C.*,
  794 F.3d 31 (D.C. Cir. 2015)..............................................................13

*NO Gas Pipeline v. FERC*,
  756 F.3d 764 (D.C. Cir. 2014)..............................................................3

*Olim v. Wakinekona*,
  461 U.S. 238 (1983) ..........................................................................15

*Ownbey v. Morgan*,
  256 U.S. 94 (1921) ......................................................................16, 18

*Pa. Envtl. Council, Inc. v. Bartlett*,
  315 F. Supp. 238 (M.D. Pa. 1970).....................................................14

*Payne v. Kassab*,
  361 A.2d 263 (Pa. 1976).....................................................................17

*Phila. Elec. Co. v. Hercules, Inc.*,
  762 F.2d 303 (3d Cir. 1985) ...............................................................18

*Pitt Ohio Express v. Workers' Comp. Appeal Bd. (Wolff)*,
  912 A.2d 206 (Pa. 2006).....................................................................19

*Price v. Socialist People's Libyan Arab Jamahiriya*,
  294 F.3d 82 (D.C. Cir. 2002)..............................................................16

*Pub. Citizen, Inc. v. Nat'l Highway Traffic Safety Admin.*,
  489 F.3d 1279 (D.C. Cir. 2007)............................................................5

*Robinson Twp. v. Commonwealth*,
  83 A.3d 901 (Pa. 2013)..................................................................18, 20

*Shelley v. Kraemer*,
  334 U.S. 1 (1948) ..............................................................................16

*Sierra Club v. FERC*,
  No. 14-1249, 2016 WL 3525562 (D.C. Cir. June 28, 2016)................12

*Sierra Forest Legacy v. Rey*,
  577 F.3d 1015 (9th Cir. 2009)........................................................21, 22

**Court Cases—Continued**                                                              **Page(s)**

*Sierra Forest Legacy v. Sherman*,
 646 F.3d 1161 (9th Cir. 2011) ................................................................22

*Taylor v. Beckham*,
 178 U.S. 548 (1900) ...............................................................16, 17, 18

*Town of Castle Rock v. Gonzales*,
 545 U.S. 748 (2005) ...............................................................................20

*U.S. Dep't of Navy v. FLRA*,
 665 F.3d 1339 (D.C. Cir. 2012).................................................................6

*United Artists Theatre Circuit, Inc. v. Twp. of Warrington*,
 316 F.3d 392 (3d Cir. 2003)....................................................................22

*United Church of the Med. Ctr. v. Med. Ctr. Comm'n*,
 689 F.2d 693 (7th Cir. 1982).............................................................9, 14

*United Retail & Wholesale Emps. Teamsters Union Local No. 115 Pension Plan v. Yahn & McDonnell, Inc.*,
 787 F.2d 128 (3d Cir. 1986) ..................................................................14

*United States v. James Daniel Good Real Prop.*,
 510 U.S. 43 (1993) .................................................................................19

*United States v. Richardson*,
 418 U.S. 166 (1974) .................................................................................5

*United States v. Salerno*,
 481 U.S. 739 (1987) ...............................................................................25

*Ward v. Vill. of Monroeville*,
 409 U.S. 57 (1972) .....................................................................3, 7, 8, 9

*Washington v. Harper*,
 494 U.S. 210 (1990) ...............................................................................21

*Wilkinson v. Austin*,
 545 U.S. 209 (2005) ...............................................................................21

*Withrow v. Larkin*,
 421 U.S. 35 (1975) .............................................................................6, 11

**Administrative Cases**

*Jordan Cove Energy Project, L.P.*,
 154 FERC ¶ 61,190 (2016).....................................................................10

*Ozark Gas Transmission Sys.*,
 43 FERC ¶ 61,443 (1988)........................................................................10

*Turtle Bayou Gas Storage Co.*,
 135 FERC ¶ 61,233 (2011)......................................................................10

**Statutes and Regulations**                                                                   **Page(s)**

15 U.S.C. § 717f ................................................................................................................ 10

15 U.S.C. § 717r ......................................................................................................... *passim*

31 U.S.C. § 1341 ................................................................................................................. 5

31 U.S.C. § 1349 ................................................................................................................. 6

31 U.S.C. § 1350 ................................................................................................................. 6

42 U.S.C. § 7178 ............................................................................................................. 4, 5

18 C.F.R. § 385.214 .......................................................................................................... 15

**Constitutional Provisions**

Pa. CONST. art. I, § 27 .................................................................................................. *passim*

U.S. CONST. amend. V .......................................................................................... 15, 16, 23

**Other Authorities**

FERC, *Plan for Operating in the Event of a Lapse in Appropriations* (Sept. 2015) ..................... 6

U.S. Dep't of Defense, *FY 2015-2018 Agency Strategic Plan* (2015) .......................................... 6

U.S. Envtl. Protection Agency, *FY 2014-2018 EPA Strategic Plan* (2014) ................................. 6

## I.  INTRODUCTION

This case has come into clear focus.  Despite the broad range of allegations in the Complaint, Plaintiffs Delaware Riverkeeper Network and Maya van Rossum (collectively, "DRN") have clarified that they are pursuing only two claims, both grounded in the Due Process Clause:  (1) a *facial* "structural-bias" claim, alleging that FERC's funding statute creates an impermissible "possible temptation" to approve pipeline projects; and (2) a *facial* challenge to the Commission's use of "tolling orders" to allow additional time to act on requests for administrative rehearing.  *See* DRN Br. 1-2.  DRN has abandoned here *any* freestanding claim of actual bias in the PennEast proceeding.  *See id.* at 8 ("[FERC's] specific actions with regard to the PennEast project are not what is at issue here").[1]  As such, DRN's allegations of "actual bias," and references to the PennEast project, are irrelevant to the merits.

Even assuming DRN has established standing for its remaining claims (and it has not), its challenges fail.  For DRN's structural-bias claim to proceed, this Court would have to endorse a radical expansion of due process law that:  (1) extends the "structural bias" doctrine to prohibit fee-based reimbursement mechanisms that are ubiquitous in modern government, and neither directly nor substantially affect an agency's actual funding levels; and (2) dilutes the standards for cognizable "liberty" and "property" interests, and constitutionalizes a host of aesthetic, recreational, and collectivistic interests.  That path is foreclosed by binding precedent, and would create substantial obstacles for everyday governance at the federal, state, and local levels.  DRN's through-the-looking-glass account of protected "liberty" and "property" interests would mean that—as a matter of *federal* constitutional law—myriad government activities, from minor

---

[1] Evidently, DRN has also abandoned its request that this Court declare "unconstitutional" the eminent domain authority that Congress conferred on certificate holders, and the Natural Gas Act's preemptive effect on state and local laws.  *See* Compl. 59-60.  DRN offers only a single passing reference to those issues in opposing dismissal.  *See* DRN Br. 25.

adjustments to State water quality regulations to even granting a fishing license or camping permit for a state park, would necessitate every *citizen in the Commonwealth of Pennsylvania* receiving notice and an opportunity to be heard before the State takes action.  *Cf.* DRN Br. 19 (asserting private property interests in state-owned "lands" and "fish").  That cannot be the law.

DRN frames its tolling-order claim as a *facial* challenge, but relies on factual assumptions that are not true in every case.  Even accepting *arguendo* DRN's mistaken view that issuing a tolling order and allowing construction would raise due process concerns (and PennEast contests that assertion), the due process analysis DRN presents to the Court here cannot be undertaken without knowing how long a tolling order is in place and whether the Commission actually authorizes work in the interim.  In other words, DRN's tolling-order claim is *necessarily* specific to a particular FERC certificate proceeding, and as a result, this Court lacks jurisdiction under 15 U.S.C. § 717r(b).  Even as a facial challenge, the claim is untethered from any cognizable liberty or property interest, and contravenes precedent upholding the use of tolling orders.  The tolling-order issue is also irrelevant to the objective analysis of a structural-bias claim, which focuses on whether there is a disqualifying *financial* interest.

## II.    PLAINTIFFS CONCEDE SEVERAL JURISDICTIONAL DEFECTS.

DRN offers no response to several jurisdictional defects identified by PennEast.  First, DRN has not tried to show standing as an organization itself, *see* PennEast Br. 5-6, instead relying exclusively on "associational" standing, *see* DRN Br. 9.  Second, DRN does not dispute that this Court lacks jurisdiction over any freestanding "actual-bias" claim, or that such a claim is unripe.  A claim of "actual bias" would address the Commission's conduct in a particular case, and seek relief from "an order issued by the Commission," and thus is subject to "exclusive"

appellate jurisdiction.  *See* 15 U.S.C. § 717r(b); PennEast Br. 5.[2]  To be ripe, an actual-bias claim must include allegations about a decisionmaker's conduct in a particular proceeding, which DRN has not done.  *See* PennEast Br. 25-26.  DRN evidently concedes the points, disclaiming any reliance on "[FERC's] specific actions with regard to the PennEast Project."  DRN Br. 8.[3]

Elsewhere, DRN seeks to blur the line between actual and structural bias.  For instance, DRN spills much ink to prove a point that nobody disputes:  *i.e.*, that 15 U.S.C. § 717r(b) does not divest this Court of jurisdiction to hear a *facial* challenge to the Budget Act.  *See* DRN Br. 5-6.  As for the suggestion that its "allegations of 'actual bias' . . . constitute evidence of the Commission's inherent bias" on the merits, DRN Br. 8, such allegations are irrelevant under the objective standard used for a facial, structural-bias claim.  *See infra* Part IV.

## III.   PLAINTIFFS FAIL TO STATE A CLAIM OF STRUCTURAL BIAS.

The Supreme Court has only once upheld the kind of "institutional" bias claim that DRN advances here, more than four decades ago.  *See Doolin Sec. Sav. Bank, F.S.B. v. FDIC*, 53 F.3d 1395, 1406 (4th Cir. 1995) (citing *Ward v. Vill. of Monroeville*, 409 U.S. 57 (1972)).[4]  And DRN

---

[2] *NO Gas Pipeline v. FERC*, 756 F.3d 764, 769 (D.C. Cir. 2014) (cited at DRN Br. 6), concluded that 15 U.S.C. § 717r(b)'s rule of exclusive appellate review did not foreclose jurisdiction in the district court, because the petitioner there "d[id] not target any aspect of FERC's *actual* decision and there is no claim properly before us that the process that produced the decision was tainted by actual bias or some other improper motivation."  (Emphasis added). The necessary implication was that a properly preserved claim of actual bias would have fallen within § 717r(b).  None of the other decisions DRN cites holds that an "actual bias" claim can support the kind of facial challenge mounted here.  In fact, the D.C. Circuit applies a strong presumption against reviewing actual-bias claims prior to final agency action.  *See* PennEast Br. 6 (quoting *Air Line Pilots Ass'n, Int'l v. Civil Aeros. Bd.*, 750 F.2d 81, 88 (D.C. Cir. 1984)).

[3] DRN's standing declarations contain a range of allegations about supposed environmental and other harms believed to be associated with the PennEast Project.  PennEast disputes these allegations and reserves the right to rebut them at an appropriate time.  It is unnecessary to do so now, because DRN lacks standing even assuming the truth of the allegations in the standing declarations, and the case can be dismissed without resolving these disputed factual issues.

[4] The only two post-*Ward* Supreme Court cases to find bias based on financial incentives expressly relied on the *personal* financial stake the adjudicators had in the issues they decided.

does not dispute that its expansive theory of structural bias would invalidate the funding mechanisms of dozens of federal agencies. *Compare* Statement of Interest of the U.S. 14-15 & n.7 (identifying "[m]ore than twenty-five (25) federal agencies" with such funding mechanisms), *and* PennEast Br. 21-22, 25 n.12 (similar), *with* DRN Br. 32 (only attempting to distinguish the FDIC). This Court should decline to extend the structural-bias doctrine in a manner no federal court has countenanced. As explained below, this case does not involve any financial "temptation" because the Commission does not receive any of the funds collected from industry. In any event, the level of "temptation" alleged is unlike any case finding a due process violation.

## A. The Commission's Statutory Funding Structure Creates No Incentive To Approve Pipeline Projects.

Because DRN advances only a facial claim of structural bias, this case can and should be resolved based on the text of 42 U.S.C. § 7178 and other relevant statutory provisions. Section 7178 creates no "temptation" for the Commission to approve pipeline projects. Nothing in it exempts the Commission from the normal appropriations process, or the many laws and mechanisms by which Congress enforces its "power of the purse" against the executive branch. Rather, § 7178 simply requires the Commission to recover, after the fact, its "costs incurred" in administering the natural gas and other programs, and to deposit those amounts into the "general fund of the Treasury." *Id.* § 7178(a), (f); *see also* FERC Br. 31-40; PennEast Br. 17-24. Despite repeated references to "contested issues of fact," *see* Br. 3, 26, 28, DRN has never explained what facts it would seek to discover (and from whom) that could show a financial temptation.

Unable to dispute that *Congress* (not FERC) decides the Commission's budget, DRN baldly asserts that "Congress has no effective incentive or means for capping the Commission's

---

*See Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813, 824 (1986) (judge had "direct, personal, substantial, and pecuniary" interest); *Gibson v. Berryhill*, 411 U.S. 564, 579 (1973) ("possible personal interest").

costs." DRN Br. 29.  Congress would surely be surprised to learn that there are no "effective" checks on its decision to appropriate hundreds of millions of taxpayer dollars each year to fund the Commission—money that will be spent whether or not the Commission can collect it from regulated entities a year later.  PennEast is aware of no authority suggesting that Congress would or could relinquish its "ultimate weapon of enforcement" against the Executive Branch so easily—its "power of the purse," *United States v. Richardson*, 418 U.S. 166, 178 n.11 (1974)— simply by directing an agency to reimburse the Treasury for costs incurred.  *Cf. Pub. Citizen, Inc. v. Nat'l Highway Traffic Safety Admin.*, 489 F.3d 1279, 1295 (D.C. Cir. 2007).[5]

Attempting to differentiate recoverable "costs," 42 U.S.C. § 7178(a)(1), from the amount of the Commission's appropriation, DRN suggests that the Commission might collect and spend funds "beyond what was appropriated by Congress."  DRN Br. 30.  The idea appears to be that FERC might incur costs (*i.e.*, spend money) beyond its Congressional appropriation, later collect those costs from regulated industry, fail to deposit those funds into the Treasury as required by law, and thereby bypass Congress as a meaningful constraint.  *See* DRN Br. 31 (alleging that "the Commission planned to and did spend more than the Congressional appropriation").  But, among other things, the Anti-Deficiency Act prohibits federal agencies and employees from spending or obligating funds beyond an appropriation—upon pain of civil and criminal sanctions.  *See* 31 U.S.C. § 1341(a)(1)(A) (prohibiting any federal "officer or employee" from making or authorizing expenditures from, or creating or authorizing an obligation under, any appropriation or fund in excess of the amount available in the appropriation or fund unless authorized by law); *id.* § 1341(a)(1)(B) (prohibition on "involv[ing] the] government in a contract

---

[5] Comments submitted in the Commission's 1987 rulemaking (cited at DRN Br. 28-29) add nothing.  The Budget Act's plain text shows that—contrary to DRN's assertion—it is Congress, not the Commission, that determines whether there will be an "increase in the Commission's expenditures" each year.  *See id.* at 29.

or obligation for the payment of money before an appropriation is made"); *id.* § 1349 ("administrative" penalties); *id.* § 1350 (criminal fines and "imprison[ment]"); *U.S. Dep't of Navy v. FLRA*, 665 F.3d 1339, 1347-48 (D.C. Cir. 2012) ("Congress's control over expenditures is absolute.").[6]   Given the "presumption of honesty and integrity in those serving as adjudicators," *Withrow v. Larkin*, 421 U.S. 35, 47 (1975), DRN cannot plausibly suggest that FERC employees would risk personal criminal liability merely to spend (and then later collect) funds beyond the agency's appropriation.

DRN's other arguments are similarly fanciful, warranting only brief responses.   DRN concedes that Congress sometimes appropriates less money than FERC requests.   DRN Br. 31. DRN complains, however, that when Congress once cut FERC's budget by $22 million in a single year, the Commission made up the shortfall by spending *less* than it had been appropriated the year before, and carrying the surplus forward.   *Id.*   But evidence that FERC pinched pennies one year to ensure funding for the next shows a responsible agency subject to real fiscal constraint—not (as DRN imagines it) one spending whatever it wants, secure in the knowledge that it can increase its funding by approving new pipelines.[7]   And DRN's suggestion that fees from annual charges are used to pay FERC employee salaries (DRN Br. 33), ignores the actual temporal sequence:  funds are appropriated, then spent, and only later recouped.   DRN's case

---

[6] The Commission takes these obligations seriously.   *See* FERC, *Plan for Operating in the Event of a Lapse in Appropriations* (Sept. 2015), https://www.ferc.gov/about/strat-docs/contingency-plan.pdf (explaining that if Congressional appropriations lapse, "FERC will do an orderly shutdown of non-excepted activities" and retain only 48 out of 1,492 employees, and that under the Anti-Deficiency Act, FERC "may not incur obligations that cannot be lawfully funded from prior year appropriations, unless such obligations are otherwise authorized by law").

[7] DRN complains that FERC plans ahead (Br. 34), but it is commonplace for federal agencies to do so.   *E.g.*, U.S. Envtl. Protection Agency, *FY 2014-2018 EPA Strategic Plan* (2014), https://www.epa.gov/planandbudget/strategicplan; U.S. Dep't of Defense, *FY 2015-2018 Agency Strategic Plan* (2015), http://dcmo.defense.gov/Portals/47/Documents/Publications/ASP/FY2016_2018ASP.pdf.

rests on the implausible assumption that the Commissioners and FERC staff will put a thumb on the scale favoring a particular pipeline application, based on a speculative fear that, if someday there are not enough pipelines to pay the fees needed to cover FERC's costs, Congress will cut off appropriations and effectively shut down the Commission's natural gas program.[8]

### B. Even Assuming The Budget Act Creates Some Financial Incentive, It Is Too Remote And Insubstantial To Establish Structural Bias.

Allegations of structural bias fail if the "biasing influence [is] too remote and insubstantial to violate the constitutional constraints." *Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813, 826 (1986) (internal quotation marks omitted).   Here, any possible effect of the Commission's funding structure on budgets is categorically different from prior impermissible schemes, in terms of how "remote" and "insubstantial" any effect is.   DRN cannot identify *any* case finding structural bias on appreciably similar facts.

First, the Commission's certificate process has a far more "remote" effect on its budget than the mayor's court proceedings in *Ward*.   Even ignoring that funds go to the Treasury, and not to FERC, it would take years or decades for a pipeline approval to have the effect DRN imagines.[9]   *See* PennEast Br. 22-23.   There is no immediate impact on FERC's funding level. That is a far cry from *Ward*, where the "fines and forfeitures" the mayor collected "in ordinance and traffic cases" went directly "into the municipal treasury."   409 U.S. at 58 n.1.

---

[8] DRN's allegations also contradict themselves.   DRN complains that a pipeline proposal presents a strong financial temptation because it is a "stable long-term revenue source."   DRN Br. 34.   Yet DRN's entire theory of bias is the idea that the Commission lives in constant fear of pipelines going out of service (and feels pressure to approve new ones) because they "have finite lifespans that require eventual replacement, removal, or abandonment."   *Id.* at 35.

[9] Of course, DRN's allegations need not be taken at face value.   This Court need not accept allegations as true where they contradict "cases, statutes, and other legal authorities," or "facts in the public record."   PennEast Br. 4 (citing D.C. Circuit cases).

Second, pipeline approval decisions have a far less "[]substantial" effect on the agency's budget than the mayor's court in *Ward*.   As PennEast explained, because fees are spread volumetrically among all operating pipelines, approving an additional pipeline has *at most* a "miniscule effect" on the amounts recoverable by FERC.   *See* PennEast Br. 21.   DRN's conclusory assertion that approving new pipelines "allows the Commission to determine the size of its natural gas program budget," DRN Br. 28, is unsupported by any allegations that suggest approving an additional pipeline will have an appreciable effect on what level of fees the Commission could collect.   By contrast, in *Ward*, each decision in the mayor's court would affect the level of funds in the municipal treasury.   *See* 409 U.S. at 58 & n.1.

Given the categorical differences between the temptation alleged here, and the one found unconstitutional in *Ward*, this Court should not accept DRN's unjustified expansion of the structural-bias doctrine and jeopardize the operations of dozens of federal agencies.

### C.     DRN's Counterarguments Are Unavailing.

DRN fails to support its theory of impermissible temptation with any relevant cases.   Its arguments lack merit and are logically implausible.

First, DRN asserts that the Commissioners face a greater temptation than the mayor in *Ward* because FERC employees' salaries are "reliant on the collection of annual charges," and the Commission's inability to divert funds from other sources creates a special pressure "to protect employees in the event of a shortfall."   DRN Br. 33-34.   DRN offers no precedent to support the notion that such "financial doomsday" allegations can establish structural bias.   DRN does not explain why it is "plausible to suggest that Congress would penalize the Commission through the withdrawal of funding if, in some hypothetical future market conditions, regulated industry has difficulty paying their volumetric charges."   PennEast Br. 21.   FERC employees, like other federal public servants, ultimately depend on *Congress* to pay their salaries.

Second, DRN asserts that the Commission is especially tempted "because each pipeline approval represents a stable long-term revenue source, as opposed to the single one-time payoff in *Ward*." DRN Br. 34. DRN cites no case to support this creative reasoning. And its argument proves too much. If pipelines provide stable long-term revenue, then there is no pressing need to approve new applications. The Commission can—under DRN's reasoning—take its time and be selective about which pipelines to approve, because it knows existing pipelines will be around for decades. In contrast, the mayor in *Ward* was under constant pressure to hear more cases and impose more fines and forfeitures, given that each case yielded only a one-time payment.

DRN cites *Gibson v. Berryhill* for the proposition that an adjudicator need not have a "direct or positive" stake in a case. DRN Br. 27 (quoting 411 U.S. 564, 579 (1973)). But *Gibson* involved allegations of "possible personal interest[s]," not a mere institutional interest. *See* 411 U.S. at 579. DRN also cites the Seventh Circuit's *United Church* decision for the broad proposition that an agency cannot "use its adjudicative powers to supply more than *de minim[i]s* funds for its budget." DRN Br. 27 (citing *United Church of the Med. Ctr. v. Med. Ctr. Comm'n*, 689 F.2d 693, 699 (7th Cir. 1982)). But there, the entity adjudicating a title reverter proceeding was the same entity to which "title shall revert," giving it "a direct financial stake in the outcome." *United Church*, 689 F.2d at 698-99. Similarly, the town supervisors in *Meyer v. Niles Township* were responsible for both adjudicating claims for public aid and supervising the funds from which such claims were paid. *See* DRN Br. 27 (citing 477 F. Supp. 357, 362 (N.D. Ill. 1979)). Here, the fees the Commission recovers are paid directly to the U.S. Treasury; they are not available for the Commission's use.

IV.   **PLAINTIFFS' ACTUAL-BIAS ALLEGATIONS CANNOT STATE A CLAIM FOR RELIEF IN THIS COURT.**

Abandoning any freestanding actual-bias claim, DRN argues that allegations of actual bias somehow support a structural-bias claim.  *See* DRN Br. 39-42.  But as a matter of law, such allegations are irrelevant to a facial claim of structural bias.  The two claims involve different legal standards.  *Compare* PennEast Br. 18-19 (standard for structural-bias claims based on institutional pecuniary interests), *with id.* at 25-26 (actual-bias claims).  DRN does not dispute that the relevant question for structural bias is the existence of "a possible temptation to the average [adjudicator] which might lead him not to hold the balance nice, clear, and true."  PennEast Br. 18 (quoting *Doolin*, 53 F.3d at 1406).  DRN cites no authority—nor is PennEast aware of any—suggesting that allegations of actual bias (which focus on a specific adjudicator's prior conduct) are relevant to the question of whether a statutory structure creates a financial temptation for the "average" adjudicator (an objective standard not tied to a specific case).

Indeed, many of DRN's actual-bias allegations focus on actions by the Commission unrelated to the adjudicatory proceedings challenged here—*i.e.*, certificate proceedings pursuant to 15 U.S.C. § 717f(c).  For instance, the Commission's exercise of discretion in later enforcement efforts, *see* Compl. ¶¶ 181-90, says nothing about whether the statutory funding mechanism creates a temptation for the hypothetical "average" adjudicator to approve applications for new pipeline projects.[10]

---

[10]   DRN tries to downplay unambiguous public records that contradict its conclusory allegations.  For instance, DRN cannot dispute that the Commission denied a certificate for "a new 232-mile-long interstate natural gas transmission system" in *Jordan Cove Energy Project, L.P.*, 154 FERC ¶ 61,190, at P 10 (2016).  Although that case also involved a liquefied natural gas export facility, the Commission analyzed the pipeline and LNG facility separately.  *Id.* at PP 27-42 (pipeline); *id.* at PP 43-46 (LNG terminal).  And DRN concedes that the pipelines in *Jordan Cove*, *Turtle Bayou Gas Storage Co.*, 135 FERC ¶ 61,233 (2011), and *Ozark Gas Transmission Sys.*, 43 FERC ¶ 61,443 (1988), would all have been subject to the annual charges that allegedly create a disabling interest.  *See* DRN Br. 33 ("There is not a single natural gas

Nor does DRN dispute that proving actual bias requires a plaintiff to overcome the "presumption of honesty and integrity in those serving as adjudicators." *Withrow*, 421 U.S. at 47; *see also* PennEast Br. at 27 n.14 (explaining that the presumption is "part of the substantive standard").   If DRN's allegations cannot overcome this presumption—and they do not—no "actual bias" exists to support a structural-bias claim.[11]   For instance, even accepting DRN's alleged pattern of Commission decisions favoring pipeline companies, such conduct is legally insufficient to show bias.   Moreover, the allegation itself wrongly focuses only on outcomes and ignores conditions imposed on approvals, and DRN does not "identify any alleged error in a single past approval, let alone one that indicates bias." PennEast Br. 27.  The Complaint is bereft of allegations of "extra-judicial conduct or statements" necessary to overcome the presumption of honesty and integrity.  *See id.* at 27-28 (no errors alleged in certificate approval); *id.* at 33 (no explanation why one enforcement method is required); *id.* at 38-40 (no errors in Commission's environmental review); *id.* at 41 (no proof quoted policy statement results in actual bias); *id.* at 42 (failure to identify biased motive behind budget requests).[12]

## V.   DRN HAS NOT ALLEGED A COGNIZABLE LIBERTY OR PROPERTY INTEREST OR ANY "DEPRIVATION" UNDER THE DUE PROCESS CLAUSE.

PennEast identified two other deficiencies with the *merits* of DRN's structural-bias claim. The Complaint fails to allege (1) any liberty or property interest that is cognizable under the Due

---

pipeline company that operates a Commission-jurisdictional project that does not pay user fees that ultimately fund the Commission's budget.").

[11] This Court should not create a novel cause of action, in which allegations insufficient to support either a freestanding claim of actual bias or structural bias, respectively, somehow warrant relief under a hybrid theory.

[12] DRN asks this Court to reverse the presumption of honesty and integrity, and draw the opposite inference that FERC's actions result from bias.  *See, e.g.*, DRN Br. 41 ("Intervenor would have the Court believe that Defendants have simply developed an uncanny ability to pre-determine how much environmental analysis is necessary for each project before the project is reviewed.").  This Court should decline those invitations.

Process Clause, and (2) any "deprivation" within the meaning of the Due Process Clause.  *See* PennEast Br. 10-16.  Those merits concerns are separate from Article III standing.  *See Bond v. United States*, 564 U.S. 211, 219 (2011).  Because DRN did not plead any statutory cause of action, PennEast had no occasion to address whether the potpourri of aesthetic, recreational, and other interests, *see* Compl. ¶ 279, could establish Article III standing to bring such a claim.[13]

DRN either misunderstands or mischaracterizes PennEast's arguments, framing the question exclusively in terms of standing.  Doing so, however, improperly blurs the line between standing to bring a statutory claim, and the elements of a due process claim on the merits.  *See* PennEast Br. 8-10.  The distinction matters.  A party can have standing to bring a statutory challenge, without needing to identify a property or liberty interest that would support a freestanding due process claim.  For instance, an outdoorsman whose ability to hike, boat, or fish in public lands or waters is impeded by FERC's authorization of a natural gas project in the area would likely have standing to challenge FERC's actions as arbitrary and capricious under the NGA, or in violation of NEPA.  *E.g.*, *Sierra Club v. FERC*, No. 14-1249, 2016 WL 3525562, at *3-4 (D.C. Cir. June 28, 2016).  He can do so without showing a *constitutionally* protected private property or liberty interest in public lands, waters, or fish.  *See McBryde v. Comm. to Review Circuit Council Conduct & Disability Orders of Judicial Conference of U.S.*, 264 F.3d 52, 57 (D.C. Cir. 2001) ("[M]ere injury to reputation is not enough of an impingement on a person's liberty or property interest to trigger a requirement of due process.  But injury to reputation can nonetheless suffice for purposes of constitutional standing.") (citation omitted)).

---

[13] As explained *infra*, Part V.D, the absence of a statutory cause of action, and blurring of the line between standing and the merits, are fundamental distinctions between this case and most of the cases on which DRN relies, such as *B&J Oil and Gas v. FERC*, 353 F.3d 71, 74-76 (D.C. Cir. 2004), which addressed the question of *standing* to seek review of a FERC order under the Natural Gas Act, and did not involve any freestanding due process claim.

By framing its arguments in terms of standing, DRN invites this Court to apply the wrong legal standard, and to dilute clear limitations on the kinds of property and liberty interests protected by the Due Process Clause.  First, identifying a cognizable liberty or property interest is an absolute prerequisite to pleading a valid claim for relief under the Due Process Clause. Second, whether or not DRN's asserted interests are sufficient to show Article III standing, they cannot support a freestanding due process claim.  Third, as to any interests arguably cognizable under due process (e.g., harm to real property), DRN has not pleaded any "deprivation," as would be necessary to trigger the Clause's protections.

### A.    DRN Must Identify A Cognizable Liberty Or Property Interest, And Mere Participation In An Administrative Hearing Is Not Enough.

Identifying a cognizable liberty or property interest is an essential element of DRN's structural-bias claim.  *See* PennEast Br. 8 (quoting *NB ex rel. Peacock v. D.C.*, 794 F.3d 31, 41 (D.C. Cir. 2015)).  "The *first* inquiry in *every* due process challenge is whether the plaintiff has been deprived of a protected interest in 'liberty' or 'property.'"  *Gen. Elec. Co. v. Jackson*, 610 F.3d 110, 117 (D.C. Cir. 2010) (emphasis added) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 59 (1999)).  It is "[o]nly after finding the deprivation of a protected interest" that courts "look to see if the . . . procedures comport with due process."  *Id.*  DRN tries to avoid this binding precedent by citing decisions from other jurisdictions for the idea that a party need not identify *any* property or liberty interest to pursue a claim of structural bias.  Not so.

First, DRN cites the Sixth Circuit's 27-year-old *Hammond* case for the proposition that the "due process analysis 'hinges on what type of injury is alleged.'"  DRN Br. 9 (quoting *Hammond v. Baldwin*, 866 F.2d 172, 177 (6th Cir. 1989)).  But the quoted portions of *Hammond* involved "whether finality is required" to bring suit, not what is necessary to state a claim.  *See Hammond*, 866 F.2d at 176.  To the extent the opinion might be read more broadly, the Sixth

Circuit recently clarified that it is limited to "justiciability" and provides "no support for the proposition that a citizen has a fundamental right or liberty interest in having the government make discretionary decisions free from corruption independently from whether the citizen has a separate property or liberty interest at stake." *EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 860 (6th Cir. 2012) (discussing *Hammond*).

Second, DRN cites a decision from Pennsylvania's intermediate appellate court for the proposition that "once a party is determined to have a property interest or interest in the outcome of the litigation, that person has standing to challenge the governmental action and is entitled to a due process hearing." DRN Br. 19 (quoting *Muscarella v. Commonwealth*, 87 A.3d 966, 973 (Pa. Commw. Ct. 2014)). But the ultimate source for that citation is an out-of-circuit 1970 district court decision.[14] That district court opinion, issued six years before *Mathews v. Eldridge*, 424 U.S. 319 (1976), should play no part in this Court's merits analysis. DRN also cites *United Church*, 689 F.2d at 701. But in that case there was no question the plaintiff had a protected property interest; the case involved adjudication of title to a parcel of real property. *Id.* at 695. The portion of the opinion DRN quotes (Br. 11) addressed the propriety of injunctive relief, and only *after* the court had already found a due process violation on the merits.

Finally, DRN suggests that structural-bias claims are exempt from the requirement to show a protected interest. *See* DRN Br. 10 (quoting *United Retail & Wholesale Emps. Teamsters Union Local No. 115 Pension Plan v. Yahn & McDonnell, Inc.*, 787 F.2d 128, 137-38 (3d Cir. 1986)). But in this Circuit, "a protected interest in 'liberty' or 'property'" is necessary for "*every* due process challenge." *Gen. Elec. Co.*, 610 F.3d at 117 (emphasis added). The Due Process

---

[14] *See Muscarella*, 87 A.3d at 973 (quoting *City of Phila. v. Pa. Ins. Dep't*, 889 A.2d 664, 670 (Pa. Commw. Ct. 2005) (citing *Pa. Envtl. Council, Inc. v. Bartlett*, 315 F. Supp. 238, 245 (M.D. Pa. 1970))).

Clause is not a free-floating guarantee of process in the abstract.  *See Olim v. Wakinekona*, 461 U.S. 238, 250 (1983) ("Process is not an end in itself.").  It applies only where the government deprives a "person" of "life, liberty, or property."  U.S. Const. amend. V.  Without a cognizable liberty or property interest, the Clause does not apply.

DRN also argues that the mere fact of its intervention in the Commission's pending administrative proceeding involving PennEast triggers the Due Process Clause.  *See* DRN Br. 11-12.  DRN cites 18 C.F.R. § 385.214(b)(2), which allows participation in a FERC proceeding by any party with an "interest which may be directly affected by the outcome of the proceeding," but also "*any* interest as a (A) Consumer, (B) Customer, (C) Competitor, or (D) Security holder of a party," or where "participation is in the public interest."  *Id.* (emphasis added).  DRN's argument is curious because, by its own admission, DRN is not raising here any claim specific to the PennEast proceeding.  *See* DRN Br. 8.  In any event, nothing in § 385.214 purports to confer a protected property right—indeed, it sweeps in a range of interests that fall short of Article III standing, never mind a constitutional property or liberty interest.  Even a *statutory* right to participate in a proceeding does not, by itself, confer a constitutionally protected property or liberty interest.  PennEast Br. 11-12 (citing, *inter alia*, *Olim*, 461 U.S. at 250, and *Brandon v. D.C. Bd. of Parole*, 823 F.2d 644, 648 (D.C. Cir. 1987)).  To hold otherwise would effectively repeal that prong of the due process test, and allow third parties to bootstrap themselves into raising due process obstacles to ongoing adjudications.

## B.     DRN's Environmental Interests Are Not Protected "Property."

DRN also asserts that Article I, Section 27 of the Pennsylvania Constitution gives its members and all other "citizens of Pennsylvania . . . a property interest in public lands and natural resources," including "parks, state game lands, and other public areas and waterways in Pennsylvania."  DRN Br. 18.  DRN does not cite any other authority, except Section 27, in

attempting to show that the various environmental interests qualify as "property." *See Gen. Elec. Co.*, 610 F.3d at 119 (requiring "an independent source such as state law" to establish a property interest). But Section 27 creates at most a *public* right that would be held collectively by the entire citizenry of Pennsylvania. The Due Process Clause protects individual, not collective, property rights. Section 27 is also simply too "vague" to create a protected entitlement.

1.  <u>Section 27 Does Not Create An Individual Right.</u>

By providing that "*[n]o person* shall be . . . deprived of life, liberty, or property, without due process of law," U.S. Const. amend. V (emphasis added), the Due Process Clause is, "by its terms guaranteed to the individual. The rights established are personal rights." *Shelley v. Kraemer*, 334 U.S. 1, 22 (1948). The Clause protects "the fundamentals of *individual* liberty and *private* property," not collective interests. *See Ownbey v. Morgan*, 256 U.S. 94, 110-11 (1921) (emphases added). "[T]he 'core of the concept' of due process is 'to secure *the individual* from the arbitrary exercise of the powers of government.'" *Price v. Socialist People's Libyan Arab Jamahiriya*, 294 F.3d 82, 98 (D.C. Cir. 2002) (emphasis added) (quoting *Cty. of Sacramento v. Lewis,* 523 U.S. 833, 845-46 (1998)). Thus, *Mathews v. Eldridge* examined "the *private* interest that will be affected by the official action." 424 U.S. 319, 335 (1976) (emphasis added).

Though this principle is sufficiently fundamental that few litigants ever challenge it, the Supreme Court has twice clarified that the Clause does not protect rights held by the public generally. *Hodges v. Snyder* held that, under the Due Process Clause, "the *private* right of parties which have been vested by the judgment of a court cannot be taken away by subsequent legislation," but "[t]his rule . . . does not apply to a suit brought for the enforcement of a *public* right, which, even after it has been established by the judgment of the court, may be annulled by subsequent legislation and should not be thereafter enforced." 261 U.S. 600, 603 (1923) (emphases added). And *Taylor v. Beckham* held that "public offices are mere agencies or *trusts*,

and not property as such" for purposes of the Due Process Clause.  178 U.S. 548, 577 (1900) (emphasis added).  Thus, the Due Process Clause protects individual rights—not public rights, or items held collectively as a public trust.

Section 27 does not create individual rights.  To the extent it creates *any* enforceable rights, they would be public rights, held collectively by all Pennsylvanians, to the general environmental resources of the State, and would attach to resources held in the public trust:

> The *people* have a right to clean air, pure water, and to the preservation of the natural, scenic, historic and esthetic values of the environment.  Pennsylvania's public natural resources are the *common* property of *all the people*, including generations yet to come.  As *trustee* of these resources, the Commonwealth shall conserve and maintain them for the benefit of *all the people*.

Pa. Const. art. I, § 27 (emphases added).

Pennsylvania courts, "the ultimate expositors of state law," *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975), have confirmed this point.  *Payne v. Kassab*, 361 A.2d 263, 272 (Pa. 1976), establishes that Section 27 creates at most *collective* environmental rights.  There, a group of citizens sued to stop a street-widening project by the Pennsylvania Department of Transportation, invoking Section 27.  *Id.* at 264, 272.  The state high court reasoned that Section 27 "creates a public trust of public natural resources for the benefit of all people," makes the State "the trustee of said resources," and so "the property here involved is public property, a 'public Common.'"  *Id.*  The *Payne* plaintiffs thus "assert[ed] *a common* right to a protected value under the trusteeship of the State."  *Id.* at 273 (emphasis added).  The court refused to read Section 27 as providing an "automatic right to relief."  *Id.*

*Commonwealth v. Barnes & Tucker Co.*, 319 A.2d 871, 882 (Pa. 1974), also emphasizes the *public* nature of any rights created by Section 27.  The court held that the public's right to "pure water" provided a basis for the *state government* to require a coal company to prevent acid drainage from abandoned mines.  *See id.* ("the public has a sufficient interest in clean streams

alone regardless of any specific use thereof").  *See also Phila. Elec. Co. v. Hercules, Inc.*, 762 F.2d 303, 316 (3d Cir. 1985) (reading *Barnes & Tucker* as recognizing a "public right").

Pennsylvania's intermediate appellate court has explained that "[t]he first sentence of . . . Section [27] grants to the *public* a right to the described environmental values, while the second and third sentences establish the Commonwealth as trustees of all public natural resources." *Cmty. Coll. of Del. Cty. v. Fox*, 342 A.2d 468, 473-74 (Pa. Commw. Ct. 1975) (en banc); *see also, e.g.*, *Commonwealth v. Gavlock*, 964 A.2d 455, 457 n.6 (Pa. Commw. Ct. 2008) ("[T]he conservation of the Commonwealth's natural resources [is a] *common* right enjoyed by *all* citizens . . . ." (emphasis added)).  Any such right would be enforceable, at most, against Pennsylvania itself.  *See Feudale v. Aqua Pennsylvania, Inc.*, 122 A.3d 462, 467 (Pa. Commw. Ct. 2015), *aff'd*, 135 A.3d 580 (Pa. 2016).

In reading Section 27 to confer individual *private* rights, DRN relies exclusively on a plurality opinion that did not command the votes of a majority of the Pennsylvania Supreme Court.  *See* DRN Br. 18-19 (quoting *Robinson Twp. v. Commonwealth*, 83 A.3d 901, 913, 955-56 (Pa. 2013) (opinion of Castille, C.J.)).  By its terms, however, even that opinion undermines DRN's claim.  It concluded that the natural resources protected by Section 27 are "the common ownership of the people" and are held in an "environmental public trust" for which "[t]he Commonwealth is named trustee."  *Robinson Twp.*, 83 A.3d at 954, 956.  Thus, even under this expansive reading, any property rights established by Section 27 would not be "private property" protected by due process.  *See Ownbey*, 256 U.S. at 111.  Those rights would be held in a public "trust[]" and would "not [be] property as such" under the Due Process Clause.  *See Taylor*, 178 U.S. at 577.  In any event, the plurality opinion "is not binding authority" under Pennsylvania law.  *Commonwealth v. Thompson*, 985 A.2d 928, 937 (Pa. 2009); *Pitt Ohio Express v. Workers'*

*Comp. Appeal Bd. (Wolff)*, 912 A.2d 206, 208 (Pa. 2006).   Thus, the majority opinions cited above establish that Section 27 does not create individual rights cognizable for due process.

A moment's reflection reveals why DRN's position cannot be correct.  If Section 27 did support individual due process claims, then every citizen of Pennsylvania would have a *federal* constitutional right to notice and an opportunity to be heard before the Commonwealth (or any of its agencies or local governments) takes any action that could affect the State's environmental resources or the citizens' enjoyment of the same.  *See United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 48 (1993) ("individuals must receive notice and an opportunity to be heard before the Government deprives them of property").  So, before the Commonwealth could grant a permit or easement allowing the use of public property; before it could authorize consumption of water from a public reservoir; or even grant a license to fish or camp in a state park, advance notice would be due every citizen, and a pre-deprivation hearing for any who believed the Commonwealth should not grant the permit, or allow use of the water, fish, or land. Unsurprisingly, DRN cites no case involving such claims.

Such a framework would allow third parties to grind federal, state, and local government to a halt.  The Supreme Court recognized the danger of such an argument over a century ago when it refused to hold that the Due Process Clause creates a right to be heard prior to administrative rulemakings or other quasi-legislative acts that may affect the general population. *See Bi-Metallic Inv. Co. v. State Bd. of Equalization*, 239 U.S. 441, 445-46 (1915).  Such an expansion of due process would render government action unconstitutional "unless every person affected had been allowed an opportunity to raise his voice against it."  *Id.* at 445.  "There must be a limit to individual argument in such matters if government is to go on."  *Id.*  So too here.

2.      Section 27 Does Not Create Sufficiently Definite Interests To Be Cognizable Under The Due Process Clause.

Even if Section 27 could be read to create privately enforceable rights, the contours of those rights are too vague to trigger due process protection.   The entitlement at issue in a procedural due process case must be well defined.   *See, e.g.*, *Bell v. Burson*, 402 U.S. 535, 539 (1971) (driver's license).   Under *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 763-64 (2005), an individual cannot "be safely deemed 'entitled' to something" for purposes of due process "when the identity of the alleged entitlement is vague."   In *Castle Rock*, the Court rejected a claim that a state restraining-order statute created a cognizable property interest—despite a mandate that police "shall use every reasonable means to enforce a restraining order."   *Id.* at 759, 763 (internal quotation marks omitted).   The entitlement was too "vague" because it did not specify whether the holder of the restraining order was entitled to "hav[e] police arrest her husband, hav[e] them seek a warrant for his arrest, or hav[e] them use every reasonable means, up to and including arrest, to enforce the order's terms."   *Id.* at 764 (quotation marks omitted).[15]

Section 27 is similarly vague.   Among other things, Section 27 does not specify the *scope or extent* of the rights, *when* they are violated, *who* can enforce or waive them, *who* those rights can be enforced against, or *what* manner of enforcement the rights require.   *See* Pa. Const. art. I, § 27.   For instance, Section 27 speaks of a right to "clean air" and "pure water," but does not specify how "clean" or how "pure." *See id.*   As even the *Robinson Township* plurality conceded, "air and water quality have relative rather than absolute attributes."   83 A.3d at 953.   Like the statute held not to create a cognizable property right in *Castle Rock*, Section 27 could authorize a

---

[15]   Under *Castle Rock*, a state statute requiring city governments to make health insurance available to their retirees "to the extent possible" is too vague to create a cognizable property interest because "whether or how much insurance will be 'possible' cannot be determined in advance."   *Doyle v. City of Medford*, 606 F.3d 667, 675 (9th Cir. 2010).

broad range of outcomes when a plaintiff seeks enforcement, and no particular outcome can "be determined in advance." *Doyle v. City of Medford*, 606 F.3d 667, 675 (9th Cir. 2010).

### C.    DRN's Alleged Environmental, Aesthetic, And Recreational Interests Are Not "Liberty Interests" Under The Due Process Clause.

DRN alternatively asserts that its "members' environmental, aesthetic, and recreational interests are liberty interests protected by constitutional due process guarantees." DRN Br. 20.[16] To qualify as a protected liberty interest under the Due Process Clause, the interest must either: (1) "be located in the Constitution itself"; or (2) "arise from an expectation or interest created by state laws or policies" that place "substantive limitations on official discretion." *Atherton v. D.C. Office of Mayor*, 567 F.3d 672, 689 (D.C. Cir. 2009) (internal quotation marks omitted).[17]

The only authority DRN identifies as establishing a protected liberty interest is a one-judge concurring opinion from the Ninth Circuit. *See* DRN Br. 20-21 (citing *Sierra Forest Legacy v. Rey*, 577 F.3d 1015, 1025-26 (9th Cir. 2009) (Noonan, J., concurring)). But again, that opinion, like DRN's brief, confuses standing and the merits. The concurrence notes that "[a]esthetic and environmental well-being" are "important enough to confer standing under the Administrative Procedure Act." *Sierra Forest Legacy*, 577 F.3d at 1025. It then leaps to the conclusion—without citation to any authority—that these "ingredients of the quality of life" are also "elements of the liberty enjoyed by a citizen" sufficient to support a constitutional due

---

[16] DRN appears to disclaim any liberty interest grounded in Section 27. *See* DRN Br. 20. But to the extent that it does attempt to claim such a liberty interest, it would fail for the same basic reasons that Section 27 does not create a cognizable property interest. *See supra* Part V.B.

[17] Cases finding a cognizable liberty interest are a far cry from the vague aesthetic and environmental allegations here, involving questions such as incarceration and conditions of confinement, *see Wilkinson v. Austin*, 545 U.S. 209, 222 (2005), the right to marry, *Loving v. Virginia*, 388 U.S. 1 (1967), or the unwanted administration of antipsychotic drugs, *Washington v. Harper*, 494 U.S. 210, 221 (1990). In this Circuit, a prisoner has no protected "liberty" interest even in the decision whether to release him on parole. *See Ellis v. D.C.*, 84 F.3d 1413, 1415-20 (D.C. Cir. 1996).

process challenge.  *Id.*  The opinion makes no attempt to ground this breathtaking expansion of

liberty "in the Constitution itself" or in any "state laws or policies."  *See Atherton*, 567 F.3d at

689.  Neither the Ninth Circuit nor any other federal court has embraced the concurrence's

sweeping views.  In fact, when the Ninth Circuit sat *en banc* later in the same case, it declined to

follow the concurrence's reasoning.  *See Sierra Forest Legacy v. Sherman*, 646 F.3d 1161, 1169

(9th Cir. 2011) (en banc).  The views of one out-of-circuit judge cannot meet DRN's burden to

establish a protected liberty interest in diffuse environmental and aesthetic concerns, given that

"[t]he *first* inquiry in *every* due process challenge is whether the plaintiff has been deprived of a

protected interest in 'liberty' or 'property.'"  *Gen. Elec. Co.*, 610 F.3d at 117 (emphases added).

### D.   Even If DRN Identified Cognizable Property Or Liberty Interests, It Has Not Alleged Any "Deprivation" Under The Due Process Clause.

Even assuming some of DRN's members have alleged cognizable liberty or property

interests, DRN has not alleged any "deprivation" cognizable under the Due Process Clause.[18]

The Complaint only alleges three "deprivations" of property or bodily liberty, none of which

triggers the Due Process Clause.  *See* PennEast Br. 12.  Having offered essentially no responsive

argument, DRN apparently concedes the points.  First, even if any of its members' real property

becomes subject to eminent domain if the Commission grants PennEast a certificate, that at most

triggers protections for a "taking" under the Takings Clause, and cannot require the kind of pre-

deprivation process DRN seeks.  *See id.* at 13-14.  Second and third, the kind of inadvertent

damage to members' property or persons the Complaint alleges, if it occurs, would at most

constitute negligence by FERC, not a "deprivation" for due process purposes.  *See id.* at 15-16.

---

[18] DRN cites a Third Circuit decision involving a *substantive* due process challenge to land-use regulations.  *See* DRN Br. 12 (citing *DeBlasio v. Zoning Bd.*, 53 F.3d 592, 600-01 (3d Cir. 1995), *abrogated by United Artists Theatre Circuit, Inc. v. Twp. of Warrington*, 316 F.3d 392 (3d Cir. 2003)).  But that case does not address whether a "taking" triggers procedural due process.

*B&J Oil and Gas v. FERC*, 353 F.3d 71, 75 (D.C. Cir. 2004), does not prove otherwise. *See* DRN Br. 12.  *B&J Oil* involved a petition for review under the Administrative Procedure Act, based on the substantive provisions of the Natural Gas Act—not a due process claim. *Compare B&J Oil*, 353 F.3d at 73, 75-76 (petition for review based on statutory law), *with* PennEast Br. 8 (DRN's "sole pleaded basis" is Due Process Clause).  *B&J Oil*'s discussion of eminent domain was limited to whether the plaintiffs had *standing* to bring their statutory claims. *See* 353 F.3d at 74-75.  But standing and merits are distinct, and an injury-in-fact sufficient for standing does not necessarily establish a protected interest for a due process claim.  *See supra* Part V.  *B&J Oil* says nothing about whether asserted harms from being subject to eminent domain support a demand for pre-deprivation process before an eminent domain case.[19]

## VI.  PLAINTIFFS' TOLLING-ORDER ALLEGATIONS FAIL TO STATE A CLAIM AND DO NOT SHOW STRUCTURAL BIAS.

DRN's tolling-order allegations fail to state a claim—either as a freestanding due process claim, or as support for the structural-bias claim.

### A.    The Tolling-Order Allegations Fail To State A Viable Freestanding Claim.

DRN's freestanding tolling-order claim fails for several reasons.  First, if DRN has not identified a cognizable liberty or property interest for a structural-bias claim, *see supra* Part V, then its tolling-order claim fails for the same reason.  DRN does not dispute that any right under 15 U.S.C. § 717r is a "purely procedural right to appeal [and] not a substantive liberty interest that supports a due process claim."  PennEast Br. 38 (citing *Brandon*, 823 F.2d at 648).

---

[19] The same is true for *Gunpowder Riverkeeper v. FERC*, 807 F.3d 267, 271-72 (D.C. Cir. 2015) (DRN Br. 16-17), which analyzed Article III standing in a case brought under the Natural Gas Act, Clean Water Act, and NEPA, not a freestanding due process claim.  Also, DRN's argument based on *Gunpowder Riverkeeper* misses the point; PennEast's concern was not only redressability, but also DRN's failure to allege any facts establishing that the alleged physical damage is:  (a) more than mere negligence, or (b) attributable to FERC.  PennEast Br. 15-16.

Second, by their own terms, DRN's allegations are *necessarily specific* to the facts of a particular proceeding, and thus can only meaningfully be adjudicated as an as-applied challenge in the Court of Appeals, under 15 U.S.C. § 717r(b). Even accepting *arguendo* DRN's mistaken view that issuing a tolling order and allowing construction could potentially raise due process concerns (and PennEast disagrees), an analysis could not be undertaken without knowing how long the tolling order is in place, and whether the Commission in fact authorizes a project developer to do any construction work in the interim. *See* DRN Br. 43 (alleging that the Commission "issued at least twenty different Letter Orders allowing Transcontinental to proceed with various forms of construction activity" on its Leidy Southeast project after issuing tolling order). Even DRN does not argue that a tolling order would violate due process if FERC did not authorize any construction activity to occur before it acts on rehearing.[20]

Even viewing the tolling-order claim as a facial challenge to an alleged (unwritten) policy or practice untethered from the facts of a particular proceeding, that would be a "disfavored

---

[20] DRN's suggestion that use of tolling orders "blocked any effective judicial review" of Transco's Leidy Southeast Project (DRN Br. 43) flunks the red-faced test. DRN raised its concerns in *three separate federal-court cases*, two filed before the Commission acted on rehearing. Indeed, DRN obtained a (short-lived) stay from the D.C. Circuit, temporarily halting construction activity. When FERC authorized limited tree-cutting while requests for rehearing remained pending, DRN filed a mandamus petition and emergency motion for a stay, alleging it would suffer irreparable harm if the project moved forward before the Commission acted on rehearing. *See In re: Delaware Riverkeeper Network* (D.C. Cir. No. 15-1052). The D.C. Circuit granted a temporary stay to permit full briefing; the Court ultimately denied DRN's claims and vacated the stay. *See Order, In re: Delaware Riverkeeper Network*, No. 15-1052 (D.C. Cir. Mar. 19, 2015). DRN also sued in the Third Circuit challenging issuance of water quality certifications necessary for the same project; DRN chose not to seek a stay in that case, which was briefed and argued in October 2015. *See Del. Riverkeeper Network v. Quigley*, No. 15-2122 (3d Cir.). And after FERC issued an order denying rehearing, DRN filed yet another challenge in the D.C. Circuit—again electing for its own reasons not to ask for a stay, and not to challenge FERC's use of a tolling order. That appeal is pending. *See Del. Riverkeeper Network v. FERC*, No. 16-1092 (D.C. Cir.). DRN may not like the substantive outcomes it has obtained to date through this flurry of litigation, but to suggest that it has been denied a meaningful opportunity to obtain judicial review is simply baffling.

facial challenge." PennEast Br. 17 (citing *United States v. Salerno*, 481 U.S. 739, 745 (1987)).

That claim fails because many "set[s] of circumstances exist[]" in which the use of tolling orders

would not violate due process. *See Salerno*, 481 U.S. at 745. Indeed, the D.C. Circuit has so

held. *See* PennEast Br. 36 (citing, among others, *Cal. Co. v. Fed. Power Comm'n*, 411 F.2d 720,

721-22 (D.C. Cir. 1969), *Cal. Mun. Utils. Ass'n v. FERC*, No. 01-1156, 2001 WL 936359, at *1

(D.C. Cir. July 31, 2001), and *Kokajko v. FERC*, 837 F.2d 524, 525-26 (1st Cir. 1988)).[21]

### B.     The Tolling-Order Allegations Do Not Support A Structural-Bias Claim.

DRN's tolling-order allegations provide no support for a structural-bias claim. First,

these allegations, like allegations of actual bias, are irrelevant to the objective structural-bias

analysis, because they do not show a financial incentive. *See supra* Part IV. At most, they

demonstrate how the Commission has handled a separate aspect of its statutory authority. That

says nothing about what "possible temptation" the funding structure creates for "the average

[adjudicator]." *See* PennEast Br. 18 (quoting *Doolin*, 53 F.3d at 1406). Second, the D.C. Circuit

has long upheld FERC's use of tolling orders under 15 U.S.C. § 717r, *see Cal. Co.*, 411 F.2d at

721-22, and "lawful" agency action "is not evidence of actual bias," PennEast Br. 36.

### VII.   CONCLUSION

The Complaint should be dismissed in its entirety for lack of jurisdiction or failure to

state a claim.

---

[21] DRN asserts tolling orders "ha[ve] never been examined in the context of a due process challenge [involving] irreparable environmental harm." DRN Br. 4. But different facts in other cases do not show that "no set of circumstances exists" where tolling orders can be used lawfully. *See Salerno*, 481 U.S. at 745. In any event, DRN's assertion is false. PennEast cited cases involving due process challenges in the context of similar pipeline projects, and similar allegations of environmental harm. *See, e.g.*, Pet. for Writ of Mandamus 50-51, *In re Stop the Pipeline*, No. 15-926 (2d Cir. Mar. 27, 2015). Nor has DRN alleged "irreparable environmental harm" here. *E.g.*, Compl. ¶ 279.

Respectfully submitted,

July 7, 2016

*/s/ Michael B. Wigmore*
Michael B. Wigmore (D.C. Bar No. 436114)
Jeremy C. Marwell (D.C. Bar No. 1000299)
VINSON & ELKINS LLP
2200 Pennsylvania Avenue, NW
Suite 500 West
Washington, DC 20037
Phone: 202.639.6500
Email: mwigmore@velaw.com

*Attorneys for PennEast Pipeline Company, LLC*

*Of Counsel:*

Frank H. Markle
PENNEAST PIPELINE COMPANY, LLC
460 North Gulph Road
King of Prussia, PA 19406
Phone: 610.768.3625
Email: marklef@ugicorp.com

James D. Seegers
Sabina Dugal Walia
VINSON & ELKINS LLP
1001 Fannin St.
Suite 2500
Houston, TX 77002
Phone: 713.758.2939
Email: jseegers@velaw.com

**CERTIFICATE OF SERVICE**

I, Jeremy C. Marwell, hereby certify that a copy of the foregoing document, filed through the CM/ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies shall be served by first-class mail postage prepaid on all counsel who are not served through the CM/ECF system on July 7, 2016.

*/s/ Jeremy C. Marwell*
Jeremy C. Marwell
