**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DELAWARE RIVERKEEPER NETWORK, *et al.*, Plaintiffs, v. FEDERAL ENERGY REGULATORY COMMISSION, *et al.*, Defendants. | Civil Action No. 16-cv-416 (TSC) |

**MEMORANDUM OPINION**

The Federal Energy Regulatory Commission (FERC) is empowered to issue "certificate[s] of public convenience and necessity" allowing entities to transport natural gas and to construct, extend, acquire, or operate natural gas pipelines. 15 U.S.C. § 717f. Plaintiffs, an environmental organization and its executive director, assert that FERC is unable to make unbiased determinations on the issuance of pipeline certificates because of a provision of the Omnibus Budget Reconciliation Act of 1986 (the Omnibus Act) which requires FERC to recover its annual operating costs directly from the entities it regulates. 42 U.S.C. § 7178. Plaintiffs claim that the Commission's structure and the resulting actual or perceived bias has deprived them of constitutional Due Process under the Fifth Amendment. The PennEast Pipeline Company intervened as a Defendant, and before the court are both PennEast's and FERC's motions to dismiss the Complaint.

For the reasons below, both Defendants' motions to dismiss will be **GRANTED**.

## I. BACKGROUND

Plaintiff Delaware Riverkeeper Network (DRN) is a non-profit organization established in 1988 to protect and restore the Delaware River and its associated watershed, tributaries, and habitats, reaching parts of New Jersey, New York, Pennsylvania, and Delaware. (Compl. ¶ 25). DRN has more than 16,000 members, some of whom own land that has been impacted by pipelines authorized by the Commission in the past, and DRN believes that others own land that will be impacted by future pipelines. (*Id.* ¶¶ 35, 48). Plaintiffs allege that "DRN's members who live within the blast radius of proposed or existing Commission-jurisdictional pipelines are concerned about the increased risk of bodily and/or property harm as a result of pipeline accidents or explosions." (*Id*. ¶ 49).

PennEast applied for a certificate of public convenience and necessity allowing it to build a new natural gas pipeline system in New Jersey and Pennsylvania, and on September 28, 2015, Plaintiffs filed a motion to intervene in the FERC review process opposing the request. (*Id*. ¶ 92). Pursuant to FERC regulations, Plaintiffs' unopposed motion to intervene was granted. (*Id*. ¶ 93); 18 C.F.R. § 385.214(c)(1). Plaintiffs brought this suit before completion of the FERC review process, alleging that the review process is itself constitutionally deficient. At the motions hearing on March 3, 2017, counsel for FERC informed the court that FERC has delayed the PennEast project twice to conduct additional environmental reviews, and that as of that date, it had not approved the project or granted a certificate.

FERC certification proceeds in several steps. The first is the "pre-filing process," in which the applicant must make an initial filing including, among other things, the desired schedule of the project, anticipated application filing date, and desired date of Commission approval; information about zoning; a detailed map and description; a list of state agencies in the

project area with permitting requirements, and a description of the applicant's negotiations with those agencies; a list of other persons and organizations of interest whom the applicant has contacted about the project; a description of any planning work that has already been done; an "acknowledgement" that a complete Environmental Report is required with the application at the time of filing; and a proposed Public Participation Plan for "facilitat[ing] stakeholder communications and public information." 18 C.F.R. § 157.21.

Once the applicant has applied for the certificate, FERC then determines whether "'the applicant is able and willing properly to do the acts and to perform the service proposed ... and that the proposed service' and 'construction ... is or will be required by the present or future public convenience and necessity.'" *Minisink Residents for Envtl. Pres. & Safety v. FERC*, 762 F.3d 97, 101 (D.C. Cir. 2014) (quoting 15 U.S.C. § 717f(e)). In deciding whether to approve the application and grant the certificate, FERC conducts an environmental review as required by the National Environmental Policy Act (NEPA), 42 U.S.C. §§ 4321–4370h. FERC can approve or deny the application, and can "attach to the issuance of the certificate and to the exercise of the rights granted thereunder such reasonable terms and conditions as the public convenience and necessity may require." 15 U.S.C. § 717f.

The statutory scheme allows "[a]ny person, State, municipality, or State commission aggrieved by an order issued by the Commission" to "apply for a rehearing within thirty days after the issuance of [an] order," for example, approving or rejecting construction of a pipeline. 15 U.S.C. § 717r(a). If the Commission does not respond to the request for rehearing within thirty days, it is deemed denied. At that point, a party who is aggrieved can obtain a review in the federal Court of Appeals where the natural gas company is located. *Id.* Regulations allow "[a]ny person" to file a motion to intervene; if the motion is not opposed within 15 days, the

person becomes a party automatically, *see* 18 U.S.C. § 385.214(a), (c), and is therefore qualified to appeal the denial of rehearing to the appropriate Court of Appeals.

The D.C. Circuit has held that section 717r's language requiring the Commission to take action with regard to a rehearing request within 30 days, or have it deemed denied, does not require FERC to act on the merits. *California Co. v. Fed. Power Comm'n*, 411 F.2d 720, 722 (D.C. Cir. 1969). The Court noted that its previous decision had "apparently agreed" with FERC's assertion that "the Commission has power to act on applications for rehearing beyond the 30-day period so long as it gives notice of this intent." *Id*. (quoting *Texaco-Ohio Gas Co. v. Fed. Power Comm'n*, 207 F.2d 615, 617 (1953)). Where the Commission issues a "tolling order" within 30 days indicating that it is postponing deciding on the merits but not yet denying an application for rehearing, the Court has found a party's appeal remains unripe because "the tolling orders do not resolve the rehearing requests but simply extend the time to consider them." *City of Glendale v. FERC*, No. 03-1261, 2004 WL 180270, at *1 (D.C. Cir. Jan. 22, 2004) (unpublished). Tolling orders have no explicit statutory basis, but have been upheld by the First and Fifth Circuits, as well as by the D.C. Circuit in several unpublished orders. *Kokajko v. FERC*, 837 F.2d 524 (1st Cir. 1988); *Gen. Am. Oil Co. of Texas v. Fed. Power Comm'n*, 409 F.2d 597, 599 (5th Cir. 1969); *California Co.*, 411 F.2d at 722; *California Mun. Utils. Ass'n v. FERC*, No. 01-1156, 2001 WL 936359, at *1 (D.C. Cir. July 31, 2001); *City of Glendale*, 2004 WL 180270 at *1.

Plaintiffs claim the Commission is unconstitutionally structurally biased because of its funding mechanism, which requires the Commission to recover its budget by charging regulated

natural gas companies, *see* 42 U.S.C. § 7178,[1] because Commissioners may be removed only for cause, and because "the Commission is insulated from Congressional budgetary oversight," resulting in deprivation of their Fifth Amendment due process rights. They argue that the Commission's actual bias supports their claim of structural bias, as evidenced by the Commission's: 100 percent approval rate; failure to enforce the terms and conditions of its certificates; treating requests for rehearing arbitrarily by issuing indefinite tolling orders; never granting a request for rehearing to a non-industry party; never determining that a full Environmental Impact Statement is necessary after completing an Environmental Assessment; failure to ever fund its Office of Public Participation; and "revolving door" through which former Commissioners have gone on to work in industry positions. (Compl. ¶¶ 175–240). Plaintiffs suggest FERC is able to effectuate pro-industry bias through the use of eminent domain and preemption of local and state laws; preventing Plaintiffs from attaining due process. (*Id*. ¶¶ 241–261).

Plaintiffs ask the court to either declare FERC's reimbursement mechanism to be unconstitutional, or declare the Commission's power of eminent domain or authority to preempt state and local laws to be unconstitutional. They also ask the court to declare the PennEast certification procedure specifically, along with the procedure the Commission utilized for any project in the Delaware River Basin, to be a violation of due process.

## II. LEGAL STANDARD

### A. Federal Rule of Civil Procedure 12(b)(1)

In evaluating a motion to dismiss under Rule 12(b)(1), the court must "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting

[1] Plaintiffs claim these charges comprise twenty percent of the Commission's overall budget and 100 percent of the gas program budget. (Opp. at 37).

plaintiff the benefit of all inferences that can be derived from the facts alleged.'" *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)). However, "'the court need not accept factual inferences drawn by plaintiffs if those inferences are not supported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions.'" *Disner v. United States*, 888 F. Supp. 2d 83, 87 (D.D.C. 2012) (quoting *Speelman v. United States*, 461 F. Supp. 2d 71, 73 (D.D.C. 2006)). Further, under Rule 12(b)(1), the court "is not limited to the allegations of the complaint," *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987), and "a court may consider such materials outside the pleadings as it deems appropriate to resolve the question [of] whether it has jurisdiction to hear the case." *Scolaro v. D.C. Bd. of Elections & Ethics*, 104 F. Supp. 2d 18, 22 (D.D.C. 2000) (citing *Herbert v. Nat'l Acad. of Scis*., 974 F.2d 192, 197 (D.C. Cir. 1992)).

Federal courts are vested with the power of judicial review extending only to "Cases" and "Controversies." U.S. Const. art. III, § 2. Courts have, in interpreting this limitation on judicial power, "developed a series of principles termed 'justiciability doctrines,' among which are standing ripeness, mootness, and the political question doctrine." *Nat'l Treasury Emps. Union v. United States*, 101 F.3d 1423, 1427 (D.C. Cir. 1996) (citing *Allen v. Wright*, 468 U.S. 737, 750 (1984)).

Standing requires, at a minimum, that a plaintiff have "suffered an 'injury in fact,'" that was or is "actual or imminent, not 'conjectural' or 'hypothetical;'" that there be a causal relationship between the injury and the basis for the claim; and that it be "'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision'." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (quoting *Allen v. Wright*, 468 U.S. 737, 756 (1984);

*Whitmore v. Arkansas*, 495 U.S. 149, 155, (1990); *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 38, (1976)). The plaintiff bears the burden of proof to establish each of the elements of Article III standing. *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015) (citing *Lujan*, 504 U.S. at 561).

Ripeness also "shares the constitutional requirement of standing that an injury in fact be certainly impending." *Nat'l Treasury Emps. Union* 101 F.3d at 1427. Additionally, the ripeness doctrine has a "prudential aspect;" in which the "court balances 'the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration'—that extends beyond standing's constitutional core." *Id*. at 1427–28 (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967)). A court can decline to exercise jurisdiction where it finds that there is little hardship to the parties and the issue is not well-suited to adjudication. The D.C. Circuit has recognized that where there is a claim of actual bias in an administrative proceeding, there is a "presumption in favor of withholding judicial review until after final agency action." *Air Line Pilots Ass'n, Int'l v. Civil Aeronautics Bd.*, 750 F.2d 81, 88 (D.C. Cir. 1984). A court may consider an actual bias claim unripe in the absence of final agency action.

**B. Federal Rule of Civil Procedure 12(b)(6)**

A Rule 12(b)(6) motion to dismiss "tests the legal sufficiency of a complaint." *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). In order to survive a motion to dismiss, a complaint must contain factual allegations that are "enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Additionally, the facts alleged in the complaint must "state a claim to relief that is plausible on its face." *Id.* at 570. The "plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering a motion to dismiss for failure to state a claim under

Rule 12(b)(6), a court must construe the complaint in the light most favorable to the plaintiffs and "must assume the truth of all well-pleaded allegations." *Warren v. District of Columbia*, 353 F.3d 36, 39 (D.C. Cir. 2004).

## III. ANALYSIS

### A. Justiciability

#### i. Standing

Defendants FERC and PennEast contend that Plaintiffs—the Delaware Riverkeeper Network and its Director—do not have standing to bring this suit. An association may have standing when it can demonstrate that it meets the elements of standing as an entity, or when "its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000).

Plaintiffs' Complaint states that "DRN is . . . deeply familiar with the impacts to human health, the environment, and property rights as a result of pipeline construction activity." (Compl. ¶ 39). It indicates that DRN "brings this action on behalf of the organization as part of the pursuit of its organizational mission, and on behalf of its impacted members, the board, and staff." (*Id.* ¶ 41). According to the Complaint, DRN's director, Maya K. van Rossum, "regularly visits" the Delaware River and "has taken family, friends, DRN members, and other interested people onto the Delaware River and its tributaries to educate them." (*Id.* ¶ 45). The Complaint asserts that "DRN's members . . . have had their aesthetic, recreational, and property interests harmed as a result of construction and operational activity" of pipelines within the Commission's jurisdiction. (*Id.* ¶ 46). The Complaint alleges that the various pipelines' impact on DRN members is both past and future, including "damage to real estate," "encroachment of

construction debris upon their homes and property," "increased risk of bodily and/or property harm as a result of pipeline accidents or explosions," members' property being subject to eminent domain proceedings, which in turn "compromise[s]" members' "bargaining position with pipeline companies for easement agreements," and aesthetic degradation of public parks affecting members' recreational interests. (*Id*. ¶¶ 48–52). Generally, the Complaint alleges irreparable injury to "members' aesthetic, conservation, economic, recreational, scientific, educational, wildlife preservation, and property interests." (*Id.* ¶ 54). It also alleges injury in the form of FERC's "violat[ion] [of] DRN's right to timely judicial review of Commission certificates." (*Id.* ¶ 53).

FERC argues that Plaintiffs cannot establish standing: while allegations of past injury cannot be used to attain standing for declaratory or injunctive relief, as Plaintiffs seek, their claims of future injury are too attenuated and speculative. *See Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147 (2013) (upholding dismissal of suit for declaratory relief regarding provision of Foreign Intelligence Surveillance Act because plaintiffs could not demonstrate "that the injury is *certainly* impending" (internal quotation marks omitted). PennEast adds that DRN has not stated any facts that would establish standing based on injury to DRN itself.

Plaintiffs' opposition clarifies that they do not argue that DRN has standing as an organization, but rather that they intend to demonstrate only associational standing. They maintain that they have associational standing because DRN's members, including director Rossum (whom Plaintiffs call "the Riverkeeper"), "have suffered a constitutional injury" in the form of being "subject to a biased decisionmaking process, or the appearance of a biased process." (Opp. at 9). Plaintiffs argue that they need not demonstrate a protected liberty or property interest in order to have standing, because the deprivation of fair process itself

constitutes sufficient injury. Plaintiffs cite a case in which the Seventh Circuit found a church had experienced constitutional injury in the form of deprivation of due process when a medical commission with a direct financial stake in the matter presided over a determination of whether to revert the church's land title. *United Church of the Med. Ctr. v. Med. Ctr. Comm'n*, 689 F.2d 693 (7th Cir. 1982). Plaintiffs also cite a Sixth Circuit case in which landowners alleged, among other things, deprivation of due process by a state agency, which plaintiffs claimed was biased in favor of the state's interests, and which granted a permit to a waste water treatment facility impacting their land. *Hammond v. Baldwi*n, 866 F.2d 172, 176 (6th Cir. 1989). The court found that "the injury is the submission [to a biased decision-making process] itself; the biased (or potentially biased) decision may also result in injury, but it is a separate, distinct one." *Id.*

But neither the Sixth nor Seventh Circuit addressed what type of interest has to be at stake for a biased decision-making process to constitute injury. Both cases made an implicit assumption that the plaintiffs had a cognizable liberty interest at stake, which they pursued in an allegedly biased administrative forum. The Supreme Court has explicitly rejected the argument that a procedural injury alone is sufficient for standing: "deprivation of a procedural right without some concrete interest that is affected by the deprivation—a procedural right *in vacuo*—is insufficient to create Article III standing. Only a 'person who has been accorded a procedural right to protect *his concrete interests* can assert that right without meeting all the normal standards for redressability and immediacy.'" *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009) (emphasis added) (quoting *Lujan*, 504 U.S. at 572 n.7).

Plaintiffs suggest that their status as intervenors in the PennEast proceeding—which required them to demonstrate an "interest which may be directly affected by the outcome of the proceeding," *see* 18 C.F.R. § 385.214, is sufficient to establish standing based on procedural

injury. But leave to intervene in the FERC proceedings is granted automatically absent opposition, meaning that a person could be granted intervenor status without actually demonstrating any interest that may be affected by the proceeding. While neither FERC nor PennEast objected to the intervention, this court's jurisdiction requires that the plaintiffs have standing, and jurisdiction is not waivable.

Plaintiffs must, therefore, demonstrate a concrete interest tethered to the alleged deprivation of due process in order to have *standing*, but the inquiry is not identical to the question of whether they have stated a claim for a procedural due process violation, which requires a protected liberty or property interest. The threshold for the former is lower.

Plaintiffs submitted six declarations from DRN members and van Rossum, describing some past pipeline-related injuries, (*see* Farrell Decl.), as well as future likely injuries of the type stated in the Complaint: the upsetting impact of seeing the Delaware River and surrounding area "permanently altered and damaged by the Project" (van Rossum Decl. ¶ 11); negative impact to the use and enjoyment of areas near the pipeline resulting from deforestation, construction, and decreased wildlife (van Rossum Decl. ¶ 13); potential damage to property that sits fifty to a hundred feet from the PennEast proposed pipeline (Rader Decl. ¶¶ 7, 11); potential damage from proximity to a proposed pipeline expansion by Columbia Gas and/or from possible drilling under a DRN member's property for that project, as well as excessive construction noise (Nelson Decl. ¶¶ 16, 25, 27, 32–22); potential impact on property values and ability to enjoy wildlife (Heindel Decl. ¶¶ 9, 13); and potential adverse impact to commercial hay production and drinking water quality (Kelly-Mackey Decl. ¶¶ 21, 28).

The court finds Plaintiffs have stated sufficiently concrete and imminent injury, tethered to the alleged procedural due process violation, for the purposes of standing. Plaintiffs have

plausibly alleged the high likelihood of PennEast's approval for the pipeline project, as well as the high likelihood that its members will suffer concrete and particularized injuries as a result.[2] FERC argues that the alleged potential injuries are too speculative because the pipeline has not been approved and "may never be," but FERC's interpretation of the Supreme Court's standing precedent is too narrow. The likelihood of approval is enough. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983) (plaintiff's "standing to seek the injunction requested depended on whether he was likely to suffer future injury"). If Plaintiffs had to wait until the project was approved, they would be effectively unable to seek review for a procedural due process violation. Although PennEast may, as FERC states, change the route of the pipeline in the future, the fact that, at the time the Complaint was filed, the proposed route would touch or impact the declarants' property is enough. FERC asks the court to interpret standing in such a way that would render declarative or injunctive relief unavailable under any circumstances, if the conduct giving rise to imminent injury had not yet occurred. "Imminent" cannot be read out of the standard, as FERC seems to request. Plaintiffs' alleged future injuries are not as attenuated as in *Arpaio v. Obama* or *Clapper*. Nor is FERC's citation to *Metcalf v. Nat'l Petroleum Council*, 553 F.2d 176, 177 (D.C. Cir. 1977), in which the court found plaintiffs did not have standing based on their status as "consumers and citizens," apposite. Plaintiffs here cite harms that are significantly more particularized than the *Metcalf* plaintiffs. The harms are also more specific than those in *Summers*, in which the Court found an absence of Article III standing where the

[2] Plaintiffs cite as evidence of actual bias that the Commission has a 100% approval rate for its projects. (Compl. ¶ 99). PennEast responds with several examples of denials of certificate applications, (PennEast Mot. to Dismiss at 28), which Plaintiffs in turn say do not disprove their claim that "Defendants have a perfect approval record for pipeline projects that come before the Commission for a vote." (Opp. at 39–40). There appears to be no dispute that the approval rate is high, regardless of whether it is 100 percent; the court finds it is high enough to state a likelihood of approval for standing purposes.

plaintiff alleged "plans to visit several unnamed national forests in the future" and a "vague desire to return" to the Allegheny National Forest. *Summers*, 555 U.S. at 495–96.

The other two elements of standing are causation and redressability. Plaintiffs' Complaint and the declarations submitted with their Opposition plausibly allege causation. While the past harms described in the declarations do not support injunctive relief, they do demonstrate that the potential injuries Plaintiffs describe would be "fairly . . . traceable" to the Commission's approval of a pipeline project. *Lujan*, 504 U.S. at 560. Plaintiffs need not prove causation at the motion to dismiss stage; they must only plausibly allege it. When the Commission grants a certificate to a specific proposed pipeline project, and the project results in harm to wildlife or construction on a person's property, or near a person's property, in a way that causes them harm, the result is "fairly traceable."

Redressability is a slightly more challenging element, but is "loosen[ed]" in the procedural due process context, at least where statutory procedural rights are at issue. *See Summers*, 555 U.S. at 497. (*See also* FERC Reply at 5). FERC focuses its redressability analysis on the underlying potential harms described by Plaintiffs, not the procedural harm they allege from being subject to a biased proceeding. ("Riverkeeper's only basis to think [that the requested relief would alter how the Commission operates] is a misguided claim that the Commission would not approve natural gas pipelines but-for its supposed structural bias." (FERC Reply at 11)). But because Plaintiffs' alleged injury is procedural, and the alleged potential aesthetic and environmental harms are the concrete interests that give Plaintiffs enough of a claim of a procedural right for purposes of standing, the redressability analysis involves the procedural injury and not the underlying concrete interests. Plaintiffs need not allege that FERC would decide not to approve PennEast or any other pipeline in order to demonstrate

redressability; they need only allege, as they do, that the requested relief would redress their procedural injury. The court finds that Plaintiffs have Article III standing.[3]

**ii. Ripeness**

PennEast devotes several pages to arguing that Plaintiffs' actual bias claim is not ripe. In response, Plaintiffs indicate that they do not intend to bring an actual bias claim regarding the PennEast pipeline approval, but rather to use that pipeline as an "example" of structural bias. PennEast's concerns about ripeness are not implicated in a structural bias claim.

**B. Rule 12(b)(6)**

Stating a claim for a procedural due process violation requires a showing that (1) an official has deprived the plaintiff (2) of liberty or property (3) without "providing appropriate procedural protections." *Atherton v. D.C. Office of Mayor*, 567 F.3d 672, 689 (D.C. Cir. 2009). FERC emphasizes that even if Plaintiffs could "show a constitutionally cognizable property interest," they fail to state a claim of unconstitutional bias or appearance of bias. PennEast argues that Plaintiffs have failed to demonstrate deprivation of a protected liberty or property interest.

**i. Deprivation of a liberty or property interest**

[3] FERC claims that Plaintiffs' suit is "a preemptive attempt to avoid D.C. Circuit precedent that actual bias claims with 'no foundation' lack standing." (FERC Mot. to Dismiss at 19) (citing *No Gas Pipeline*, 756 F.3d 764, 770 (D.C. Cir. 2014)). In *No Gas Pipeline*, the D.C. Circuit rejected a constitutional challenge to FERC's funding structure, finding that it had jurisdiction only to review the grant of a specific pipeline certificate, and district court would be the appropriate forum in which to bring a constitutional claim. The Court also noted, "lest we overlook anything which we should address, we note that [plaintiff] has made no real attempt to demonstrate standing . . . while [plaintiff] asserts that there is actual bias and not merely an appearance, it provides no foundation upon which we could review that claim." *Id*. at 770. The Court explained that plaintiff's evidence of actual bias, the high approval rate, did not actually suggest bias. *Id.* The Court did not find an absence of injury, causation, or redressability for the purposes of standing. This court does not interpret the D.C. Circuit's comment to mean that actual bias claims without foundation lack standing; evidence of actual bias would go to failure to state a claim under Rule 12(b)(6), not standing.

Plaintiffs conflate the requirements of standing with the requirements of stating a claim for a procedural due process violation, suggesting that they need not demonstrate deprivation of a protected liberty or property interest in order to survive the motion to dismiss. But administrative decision-maker bias is a subset of procedural due process, not an independent area of law. The Supreme Court addressed the issue of administrative decision-maker bias in *Tumey v. Ohio*, 273 U.S. 510 (1927); *Ward v. Village of Monroeville*, 409 U.S. 57 (1972); and *Schweiker v. McClure*, 456 U.S. 188 (1982). All three cases involved clear liberty or property interests: in *Tumey*, a criminal fine and accompanying imprisonment; in *Ward*, fines for traffic tickets; and in *McClure*, Medicare benefits. It is one of the basic tenets of procedural due process claims that a liberty or property interest is required. *See Mathews v. Eldridge*, 424 U.S. 319, 332, (1976) ("Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment."). Plaintiffs have not provided any precedent suggesting that there may be a procedural due process claim where there is no protected liberty or property interest.

Plaintiffs argue that the Pennsylvania Constitution creates and confers a property right in the environment that is afforded due process protection. Article I, section 27 of the state constitution reads: "The people have a right to clean air, pure water, and to the preservation of the natural, scenic, historic and esthetic values of the environment. Pennsylvania's public natural resources are the common property of all the people, including generations yet to come. As trustee of these resources, the Commonwealth shall conserve and maintain them for the benefit of all the people." Pa. Const. art. I, § 27. Plaintiffs argue the right to clean air, pure water, and preservation of the environment is analogous to the right created by the state constitution to a

free public education, which a federal district court found merited due process protection. *See Mullen v. Thompson*, 155 F. Supp. 2d 448, 452 (W.D. Pa. 2001) (finding that state constitution creates a right to free public education, but no right to public education at a school of plaintiffs' choice).

*Mullen v. Thompson* is not analogous to the case at bar. While free public education is a right that is specific to an individual, section 27 creates a general, public right. Pennsylvania courts have affirmed this principle. *See, e.g.*, *Payne v. Kassab*, 361 A.2d 263, 273 (1976) ("merely to assert that one has a common right to a protected value under the trusteeship of the State, and that the value is about to be invaded, creates no automatic right to relief"). While section 27 may confer a public right that would entitle plaintiffs to sue the state of Pennsylvania for failing to protect the environment, it does not create a federal protected property interest for purposes of the Fifth or Fourteenth Amendment. As PennEast points out, it would be untenable for every citizen of Pennsylvania to have a federal due process right at stake any time the state takes action that could impact the environment. Moreoever, the language of section 27 is too vague to confer a property interest, as it does not state how clean the water must be or how pure the air. *See Town of Castle Rock v. Gonzales*, 545 U.S. 748, 763–64 (2005) (rejecting a claim that restraining order statute mandating that police "use every reasonable means to enforce a restraining order" created a property interest protected by due process).

Plaintiffs also hint at potential impact to real property as a property interest for which they are guaranteed due process. But any actual taking of real property related to a FERC proceeding would occur through the process of eminent domain, which would be a separate proceeding from the issuance of a certificate, and which has generated its own due process jurisprudence. Plaintiffs do not appear to be challenging a lack of due process in the exercise of

eminent domain; they appear to challenge the FERC proceedings which sometimes lead to eminent domain, and the real property at stake in potential subsequent eminent domain proceedings does not constitute a protected property interest granting the Plaintiffs additional, pre-eminent domain due process rights during the certificate approval stage.

Neither are aesthetic interests or enjoyment of wildlife "liberty interests" of the type protected by the Fifth Amendment. Liberty interests that garner such protection include liberty from actual physical restraint; marriage and reproductive choices, and the right to live in the United States, *see Kerry v. Din*, 135 S. Ct. 2128, 2142 (2015) (citing *Griswold v. Connecticut*, 381 U.S. 479, 485–486 (1965) and *Ng Fung Ho v. White*, 259 U.S. 276, 284–285 (1922)); and reputation, *see Gen. Elec. Co. v. Jackson*, 610 F.3d 110, 121 (D.C. Cir. 2010).

Because Plaintiffs have not identified any liberty or property interest that is cognizable under the Fifth Amendment's due process clause, they have failed to state a claim upon which relief can be granted. The declarations attached to Plaintiffs' opposition allege some degree of past property damage caused by FERC-approved pipelines, but those allegations do not allege a "deprivation" of a protected liberty or property interest within the meaning of the Fifth Amendment. Negligent conduct on the part of the government does not constitute a Fifth Amendment deprivation. *Davidson v. Cannon*, 474 U.S. 344, 347 (1986). Additionally, Plaintiffs have not alleged a sufficient connection between the Commission's conduct and the potential deprivations they foresee in the form of damage to property from drilling or potential dangers from pipeline accidents.

**ii. Structural or actual bias**

Although the court finds that Plaintiffs have failed to state a claim for procedural due process violation based on Plaintiffs' inability to demonstrate deprivation of a protected liberty or property interest, the court will also address Plaintiffs' claims of bias.

Plaintiff's claim of structural bias is that the Budget Act's provision requiring that FERC recoup its annual operating budget through a proportional charge on the regulated entities means that FERC cannot make unbiased determinations on applications for certificates. FERC argues, and the court agrees, that Plaintiffs have not plausibly pleaded that the funding structure results in bias. Plaintiffs do not dispute that Congress determines FERC's budget, which has no relationship to the number of approved pipelines or the quantity of gas being transported within FERC's jurisdiction. Plaintiffs do claim that there are "contested issues of fact" surrounding whether FERC can "increase its annual revenues beyond the amount appropriated by Congress." (Opp. at 28). But this statement, without more, is insufficient; the court is not required to assume the truth of allegations by Plaintiffs that directly conflict with the statutory scheme at issue. The plain language of the statute indicates that FERC does not have control over its own budget. The Commission's budget cannot be increased by approving pipelines; rather, 42 U.S.C. § 7178 requires the Commission to make adjustments to "eliminate any overrecovery or underrecovery." If Plaintiffs are unhappy with Congress's chosen appropriations to the Commission ("Congress does not set meaningful expense limits on the commission," (Opp. at 30)), Plaintiffs' recourse lies with their legislative representatives.

Unlike the agencies in *Tumey*, *Ward*, and *McClure*, FERC stands to gain no direct benefit from the approval of a particular pipeline project. If FERC does not approve any one project, its budget remains the same, with the proportional volumetric charge per gas company being slightly higher. If FERC commissioners also had ownership interests in gas companies, they might individually have a financial stake in granting certificates because it would reduce the proportional charges on their own companies. *See, e.g.*, *Gibson v. Berryhill*, 411 U.S. 564, 578 (1973) (finding state optometry board unconstitutionally biased because, as private practitioners,

board members had a pecuniary interest in revoking the licenses of plaintiffs in order to subsume their business).

But the Commission's general, long-term interest in its own continued existence does not result in a "possible temptation to the average [person] as a judge . . . which might lead him not to hold the balance nice, clear, and true." *Tumey*, 273 U.S. at 532. The connection between the act of approving an individual pipeline and the financial sustainability of the Commission as a whole is simply too remote to create any such bias. Not only are there "[m]ore than twenty-five federal agencies [that] receive a portion, if not all, of their respective operating costs through the collection of user fees and other annual assessments" (*see* Statement of Interest of the United States at 14, ECF No. 13), but the theory does not pass muster. Given the lifespan of a natural gas pipeline, which Plaintiffs allege "can extend twenty years, forty years, or longer" (Compl. ¶ 122), it is not plausible that the potential for FERC's budget to "dry up" if FERC stopped approving pipeline projects is imminent or tangible enough to create any bias. *See Dugan v. Ohio*, 277 U.S. 61, 62–63 (1928) (finding no due process violation where defendant was convicted in mayor's court and portions of the fines assessed went into general fund out of which mayor's *fixed* salary was paid).

Plaintiffs argue that discovery is necessary to gather information regarding the dates that all current pipeline projects will theoretically have run their full course, but the court disagrees with the premise that the existence of such a date creates a potential for bias. Additionally, if it became clear at some future point that FERC's ability to recoup its full budget through volumetric charges was jeopardized, Congress would likely come up with a new funding mechanism, because ultimately it is Congress, not regulated pipeline companies, that funds the Commission and determines its authority and activities.

Because the court finds there is no inherent structural bias or appearance of structural bias, Plaintiffs' purported examples of actual bias, which Plaintiffs offer as "evidence of the Commission's inherent bias" (Opp. at 8), are not relevant to the court's analysis. Allegations of actual bias cannot create structural bias where the court determines there is none. The Budget Act on its face does not create a FERC funding mechanism that creates unconstitutional bias for the basic reason that approval of pipeline projects does not increase FERC's budget. Plaintiffs have not alleged facts upon which relief could be granted.[4]

## IV. Conclusion

For the reasons set forth above, both Defendants' motions to dismiss will be **GRANTED**.

A corresponding order will issue separately.

Dated: March 22, 2017

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge

[4] Because the court finds that Plaintiffs fail to state a claim under Rule 12(b)(6), and dismissal is therefore appropriate, the court will not reach FERC's argument that the court should exercise its discretion to dismiss a declaratory judgment case. (FERC Mot. to Dismiss at 41–42).